### GALLUP *vs.* TRACY.

Poquetannock cove is a part of the Thames river.

Where A., B., C. and D. were legally appointed by the town of L., within which town such cove is situated, a committee for staking out oyster grounds in the Thames river, and C. soon afterward, with the consent of A. and B., staked out ground in said cove for that purpose and planted oysters thereon, but D. was not present and not notified to be present at any meeting of the other members of the committee, and did not authorize nor dissent from their action; it was held, 1st, that such committee might act by a majority of those competent to perform its duties; 2d, that it was not necessary that the members should be notified to meet, or should meet together before acting; 3d, that such proceedings were legal and valid, and that C. had a right to the oysters so laid down, and to the occupation of the ground on which they were laid.

C. having brought an action of trespass for entering on and taking oysters from the ground so staked out, founded on the forty-third section of the act for the encouragement and regulation of fisheries; (Rev. Stat. p. 562,) it was held, that the further prosecution of such action was not precluded by the repealing clause of the statute passed during its pendency in 1855, entitled " An act regulating and protecting the planting of oysters."

THIS was an action of trespass founded on the forty-third section of the "Act for the encouragement and regulation of

Gallup *v.* Tracy.

fisheries," for taking oysters from ground claimed by the plaintiff to have been staked out and occupied by him pursuant to the statute.*

At the term of the superior court holden at New London, in November, 1855, the following facts were found, and the case reserved for the advice of this court.

The plaintiff occupied a piece of ground in Poquetannock cove, about fourteen rods square, as a planting ground; and had at various times during the last twenty years, planted oysters thereon. This land was covered by the tide at low water, and was beneath the navigable waters of the state.

In the year 1854, the town of Ledyard, within the limits of which this part of the cove was situated, and which town bounds westerly on the Thames river, passed the following vote:

" At a town meeting legally warned and held on Monday, the 2d day of Oct., 1854, the following persons were appointed a committee for staking out oyster grounds in the river Thames, viz.: Abel C. Spicer, Washington Avery, Avery Gallup, 2d., Daniel Stoddard."

Avery Gallup 2d., mentioned in said vote, was the plaintiff. Soon thereafter, and before the commission of the alleged trespass, the plaintiff called out Abel C. Spicer and Washington Avery, and with their consent, staked out the *locus in quo*, in conformity with the requirements of the statute, and planted oysters thereon. The plaintiff did

---

* The section of the act above referred to is as follows:

" Sec. 43. Every inhabitant of this state may lay down or plant oysters, in any of the navigable waters of this state; and with the consent of a committee appointed for that purpose by the town in which the same shall lie, may mark and stake out the ground upon which said oysters shall have been laid down or planted, and enclose it with stakes set at suitable distances, and of such length as to be at least two feet above high water mark; and every such inhabitant who shall so lay down, or plant, or inclose oysters, shall hold, possess and enjoy the same, and shall have the exclusive right and privilege of taking up and disposing of such oysters; provided that nothing herein contained, shall affect the rights of any owner or proprietor of any meadow or other lands in which there may be salt water creeks or inlets, or which may be opposite or contiguous to such navigable waters, nor be construed to interfere with the rights of individuals, or the by-laws of any city, town, or borough, now existing."

not know that Daniel Stoddard was appointed one of the committee, but supposed that, himself being interested, it was only necessary for him to obtain the consent of Spicer and Avery. Stoddard was then living in Ledyard, and had not declined the appointment, and would have acted if he had been notified. But he was not notified of any meeting of the committee, or of any request for the staking out of this ground, and did not authorize the action of the other members of the committee; nor did he subsequently assent to or dissent from the same before this suit was brought. It was proved that after the ground was so staked out and oysters planted thereon, the defendant entered thereon and took therefrom a quantity of oysters. But the defendant claimed that said ground was not lawfully staked out, inasmuch as Stoddard had not been notified to be present and was not present at any meeting or action of the committee, and had not, expressly or impliedly, concurred in their action, in relation to the ground in question.

The court found that the staking out was in all respects regular and according to the requirements of the statute, so far as the action of the committee was involved; unless the failure to notify Stoddard, and the want of his presence and concurrence, or action, or refusal to act, rendered the same invalid and ineffectual, and reserved for the advice of this court the question, whether upon the facts found, the staking out was invalid and ineffectual, or so far forth valid and effectual.

The court further found, that the Thames is a navigable river, in which the tide ebbs and flows; that it bounds the town of Ledyard on the west, and that the jurisdiction of said town extends to the center of said river; and that the inlet called Poquetannock cove opens into said river, on the east, within the limits of the town of Ledyard, and extends easterly about two and a half miles, where it heads and receives a small stream called Poquetannock river.

The waters which fill said cove are not derived in any considerable degree from Poquetannock river, but flow in and out, from and into the Thames river, with the flow and

ebb of the tide.    Across the mouth of said cove from one point to the other, an embankment and bridge, constructed for the Worcester railroad, extended on the 2d day of October, 1854, and still remain.    Said cove is navigable at high water, and is occasionally and to some small extent navigated ; and oysters are found there, and have for many years past been planted and bedded there by the plaintiff, and in parts of it, occasionally, by other individuals.

The ground staked out was within a line drawn from one of the headlands at the mouth of the cove, to the other, and east of and within the railroad embankment and bridge aforesaid, and beneath the waters of said cove.

Upon these facts the defendant claimed, that the vote of the town of Ledyard appointing said committee, did not authorize it to stake out, or consent to the staking out of ground for planting oysters in the waters of Poquetannock cove, but that it was appointed for the purpose of staking out, or assenting to the staking out, of ground for the planting of oysters in Thames river, and there only ; and that in attempting to authorize the plaintiff to stake out and occupy said ground, they exceeded their jurisdiction, and their acts were invalid and ineffectual.

The plaintiff claimed that said cove was only an inlet of the Thames river, and properly a part of it; that the waters of the Thames river were the waters of the cove, and that they flowed in and out at each flow and ebb of the tide, and that by a reasonable construction of said vote, it should be construed to embrace the spot selected by the plaintiff, and that such was the intention of the town ; that the committee did not exceed their jurisdiction ; and that their acts in relation to the *locus in quo,* were not invalid and ineffectual.

The question so raised upon the construction of said vote, and whether the committee had power under it to assent to the staking out, by the plaintiff, of the ground, was reserved for the advice of this court.

The defendant further claimed that the sections of the statute which authorized the occupation of the ground in question, as aforesaid, and the bringing and maintenance of

the present suit, were, by the act entitled, "An act regulating and protecting the planting of oysters," passed May session, 1855, repealed without any saving clause relating to suits then pending; and that therefore this action could not be now maintained.

This the plaintiff denied. And the question so raised in relation to the effect of such repeal, was also reserved for the advice of this court.

The court further found, that the place so staked out was not a natural oyster bed, and that if said members of the committee could lawfully consent to the staking out and occupancy of the same without a notification to Stoddard, or his concurrence, and under the vote of the town of Ledyard appointing such committee, and if the act of the legislature referred to did not affect the maintenance of the present suit, the plaintiff was entitled to recover.

*Wait, E. Perkins* and *Starkweather* for the plaintiff.

1. The forty-third section of the "Act for encouraging and regulating fisheries," which permits every inhabitant of this state to plant oysters in any of the navigable waters of this state, and with the consent of a committee appointed for that purpose by the town in which the same shall lie, to mark, stake out, and enclose the ground on which such oysters are planted, does not contemplate any act to be done on the part of such committee, or any convening together to give their consent to the act of another. They are not called upon to execute any power conferred upon them, but merely to consent that another may execute a power conferred upon him. The law does not require that they should all be notified to meet together. It being a compliance with the law if a majority consent, though they consent separately, it is necessary only to call upon such majority to consent.

2. The vote of the town of Ledyard appointing said committee, did authorize them to consent to the staking out of the *locus in quo;* said Poquetannock cove being but an inlet of the river Thames, and properly a part of it. The

waters of said river are the waters of said cove, and flow into and out of the same at each flow and ebb of the tide; and by a reasonable construction of said vote, it should be construed to embrace the spot selected by the plaintiff. Such was the intention of the town; the committee did not exceed their jurisdiction; and their consenting to the staking out of the same by the plaintiff was valid and effectual.

3. The sections of the statute which authorized the occupation of the *locus in quo* as an oyster bed, and the bringing and maintenance of this suit, having been repealed during the pendency of the suit, such repeal did not in any manner affect the maintenance and prosecution of said suit: 1. Because the proviso that continued said sections in force as to any ground then marked, staked out and enclosed by virtue of the provisions of these sections, prevents the discontinuance of this suit; for the rule is, that whenever conditional stipulations of a statute are general, every thing that is necessary to make such stipulations effectual, is given by implication of law, and is also supposed to be reserved. 1 Sw. Dig., 11. 2. Because this law was in its nature a contract between the public and the plaintiff, and the right to use this particular spot having become vested in the plaintiff under the contract, a repeal of the law could not divest him of these rights. 1 Sw. Dig., 13. *Den* v. *Robinson*, 2 South., 689. *Naught* v. *O'Neal*, Breese App., 29. *McMachen* v. *The Mayor*, 2 H. & J., 41. *Taylor* v. *Rushing*, 2 Stew., 160. *Davis* v. *Minor*, 1 How., (Miss.) 183. *James* v. *Dubois*, 1 Harr., 285.

*Halsey* for the defendant.

1. The statute upon which the action is founded was repealed by the act of 1855, and there is no saving clause providing for suits pending. If judicial proceedings are begun under an act and not finished when it is repealed, they can not be pursued. 1 Kent Comm., 465. *Butler* v. *Palmer*, 1 Hill, 324. *North Canal Street Road*, 10 Watts, 351.

2. The committee had no authority to stake out oyster grounds in Poquetannock cove; the statute, being in derogation of the common law, is to be strictly construed. The

vote of the town authorized them to stake out oyster grounds in the "river Thames." The river and cove are distinct streams of water. It is to be presumed that the town used the term, as used in common expressions in that community.

3. The failure to notify Stoddard, renders the act of the committee void. They were not duly assembled, consequently there was no action by the committee, as such. Where a power of a public nature is committed to several persons, the act of a majority regularly met, is the act of the whole; but without notice to all to be present, they are not regularly assembled. *Gridley* v. *Baker*, 1 B. & P., 229. *Dobson* v. *Fussy*, 7 Bing., 305. (20 E. C. L. R. 139.) *Greene* v. *Miller*, 6 Johns., 39. *Groton* v. *Hurlburt*, 22 Conn. R., 189. Where the authority is for a private purpose, all must join in the act, and when a proviso is made that a less number may act, all must be present unless those who do not attend, had proper and sufficient notice and were wilfully absent. *Greene* v. *Miller*, 6 Johns., 39. *McInroy* v. *Benedict*, 11 Johns., 402. *Brown* v. *Kingsley*, 1 Johns. Ca., 334. *Dalling* v. *Matchett*, 2 Petersdorff Abr., 188. 1 Sw. Dig., 468.

ELLSWORTH, J. One of the questions made in this case is, whether the repeal of the statute on which the action is brought, since the commencement of the action, defeats its further prosecution. We think the plaintiff had acquired a vested right in the oysters which he had laid down, and to the occupation of the place where he laid them down, unless there be a defect in his title, which we shall consider in the sequel, and therefore, that the repeal of the statute did not take away this right of property.

There is some question, whether the vote of Ledyard extends to the waters of the Poquetannock cove. We think it does. This was undoubtedly the idea of the town, and the committee of the town; for this committee was the only one appointed to grant license in any and all the waters of the town. This however, would not be decisive of the

law of the case, though it is justly entitled to weight in construing the vote, or rather in applying it to the subject matter in dispute.

This cove is little else than the tide waters of the river Thames, rising and setting into it from the general channel, and so absolutely does the cove constitute a part of the river, that the cove is not sensibly affected by the small stream which runs into it from the land side. The margin of this river throughout, abounds in inlets, indentations and recesses, according to the form of its banks and the extent of its marshes, but none of them are of any considerable size or depth, or capable of any general use, independently of the river itself. They are, then, mere dependencies and reservoirs of its waters.

The remaining question is attended with somewhat more difficulty, and on general principles it may seem, at first view, as if it should be decided for the defendant. We refer to the want of consent of a numerical majority of the committee of the town of Ledyard, to the plaintiff's appropriation to himself of the place in said cove in which he planted the oysters in question. We make no question, that the general principle of law is, that public agents may act by majorities where all are present, or where all have notice to be present; and, generally, not otherwise. 23 Wend., 211. But the question here is, of how many the committee consisted. If of three only, these two having given consent, it is enough, unless the fact that the other one had not notice to be present, is fatal to the plaintiff's title or license. Three of the four members of the committee, strictly, may be said to have licensed and approved the location and appropriation by the plaintiff, two by express act, and the plaintiff of course, if he could be counted on the occasion; but if he could not, because he was the party to be licensed, and we think he could not, then the committee may be held to have consisted of three only, as in the case of the death of one of the number, or his inability to act, by reason of absence from the town, sickness, insanity or interest. We think the plaintiff need not be counted as

VOL. XXV, 3

one, and so there were only three who could consent to the appropriation by the plaintiff; and two of the three have consented. This is a reasonable construction of the statute, which only requires license or consent from the committee, whose action is not to be likened to the formal adjudication of a board of judges, or assembled magistrates. Such a construction of the duties of this committee as we adopt, we are persuaded is in harmony with the general usage, and the general understanding of the people of the state, and of the legal profession; and were we to decide otherwise, we should do violence to this common sentiment, and, we fear, disturb rights of property universally recognized and long enjoyed. This statute is not unlike the one which requires the consent of selectmen, where owners wish to set out trees in the highway, in front of their lands. The consent of all the selectmen is not asked, nor of a numerical majority of all, if some of them can not act, by reason of absence, sickness, &c. Without meaning to depart from the well-established law as to the manner in which public powers should be executed, or to lay down an absolute and universal rule, we incline to hold that the plaintiff's license in this instance was properly enough given, and that it is sufficient. *Damon* v. *Granby*, 2 Pick., 352. *Jones* v. *Andover*, 12 Mass., 150. 3 T. R., 592. 6 T. R., 388. 6 Johns., 39.

It is further said that the committee should have been assembled for consultation, or that all should have had notice of the assembling; and that then, the majority of the whole could have given consent. This depends upon the view taken of the character of the committee. We do not consider them to be a board necessarily to be assembled, but as having power conferred by statute to give license and permission, *seriatim*. They certainly are not a board, in common parlance; they have no fixed place of acting or consultation, no record, no clerk, no time and no mode of proceeding. They act at once when and where a license is wanted; and to impose upon them, now, the formalities and rules of boards, requiring to be regularly convened before they can act, will essentially frustrate the object of their

appointment, and needlessly embarrass the enjoyment of these minor rights and privileges. We think it wiser and more in harmony with general usage, to hold that a committee like this, need not be assembled to act, and may act by majorities of such as are competent to perform the duty. We advise judgment for the plaintiff.

In this opinion the other judges, STORRS and HINMAN, concurred.

Judgment for the plaintiff.