ALBERT S. WILSON *vs.* THE WALTERSVILLE SCHOOL DISTRICT.

A board of public officers may act by majorities, provided all are present or have notice to be present.

This rule applies to a school district committee.

And a contract made by two of three members of such a committee is valid, where the third member either authorized them beforehand to make it or consented to it afterwards.

A contract for the hiring of a teacher was prepared by two members of a school district committee and submitted by them to the third, who desired a postponement of the matter until after a school meeting soon to be held. There was conflicting evidence as to whether the postponement agreed on was merely of the signing of the contract or of all action on the matter. The judge charged the jury that if the third member was consulted by the others, and their views known to him, and the signing of the contract postponed till after the meeting, then the contract when signed by the two after the delay was valid. Held that this charge would be understood by the jury as meaning that it was valid in any view of the evidence as to the intent of the postponement, and that in that view it was erroneous.

Where the court in its charge to the jury assumes certain facts to be proved as to which there is conflicting evidence, it is ground for granting a new trial, as being calculated to mislead the jury.

The plaintiff, who had been employed as a teacher by the contract above referred to, brought a suit against the school district for a breach of the contract in refusing to accept his services and pay him his salary. The jury returned a verdict in his favor of $967, and on being sent out again with further instructions, brought in a verdict for $1,548. On a motion of the defendants for a new trial for error in the last instructions, which were wholly as to the validity of the contract, which validity was essential to the first verdict as well as the last, it was held that it would not do to assume that the last instructions if erroneous had done the defendants no harm, since the first verdict may have been, and in view of the last verdict probably was, the result of a compromise

among the jurors, and could not be taken as proof that they had agreed as to the facts necessary to the validity of the contract.

The defendants claimed that the contract was signed by two members of the committee in collusion with the plaintiff, when it was known that the majority of the voters of the district were opposed to his being employed. Held that, for the purpose of showing this, the defendants might give in evidence the acts and votes of a large number of voters of the district at a meeting of the district which, by reason of not being legally warned, was not a legal meeting; evidence being also offered that the plaintiff though not present was informed of their action before the contract was signed.

During the pendency of the suit and before the trial the district was legally abolished, but this fact was not set up by way of plea to the further continuance of the suit, nor in any way before or during the trial. After a verdict against the district the defendants brought the matter before the court by a motion in arrest of judgment. Held that the court committed no error in overruling the motion.

ASSUMPSIT for the breach of a contract to employ the plaintiff as a teacher and pay him a salary of fifteen hundred dollars; brought to the Superior Court in Fairfield County, and tried to the jury on the general issue with notice before *Culver, J.* Verdict for the plaintiff, and motion for a new trial by the defendants for errors in the rulings and charge of the court; also a motion in error. The case is sufficiently stated in the opinion.

*W. K. Seeley* and *C. Thompson*, in support of the motions.

*E. W. Seymour* and *D. Davenport*, contra.

LOOMIS, J. The defendants in their motion for a new trial claim to have been aggrieved by the charge to the jury, and by sundry rulings of the court relative to the admission of evidence. That part of the charge complained of has reference to the question whether the third member of the school district committee, in this case, had such notice of, or gave such assent to, the action of the other two members, in the matter of hiring the plaintiff to teach the school in the defendant district, as is required by law to make a binding contract. The committee consisted of McDonald, King, and Reddy. The last two only signed the contract. The question of law above mentioned arose upon conflicting claims of fact, founded on the conflicting testimony of the opposing members.

of the committee. On the part of the plaintiff it was claimed to have been proved that, as early as the 13th of April, 1872, Reddy consulted McDonald as to hiring the plaintiff another year, and the latter said, in substance, that he would leave the matter to King and Reddy, and whatever they should agree upon he would consent to. That afterwards, on the 25th day of April, the contract was in fact made and put in writing and signed by the plaintiff, but its execution on the part of the committee was delayed in order to give McDonald an opportunity to sign it; and that on the following week the latter was informed by King and Reddy that they had engaged the plaintiff for the next year, and he was asked to sign the contract, but he replied that he would not until the expiration of the plaintiff's school year then running. That on the 25th of May following King and Reddy signed and delivered the contract, in the absence of McDonald, and without any further notice to him.

On the other hand the defendants claimed, and offered evidence to prove, that McDonald had no conversation with Reddy on the 13th of April, 1872, in which he told him that he would agree to any contract which King and he should make with the plaintiff; that he never authorized them to make a contract with the plaintiff, nor said that he would agree to any they should make; that McDonald was never notified of any meeting of King and Reddy for the purpose of deciding whether to employ the plaintiff for the year commencing in the fall of 1872, or of contracting with him to teach the school for that year, nor acquiesced in the proceeding, except that on the Sunday evening before the 16th of May, 1872, at King's house, King, in the presence of Reddy, asked McDonald if it would not be advisable to hire the plaintiff for another year, to which McDonald replied it would be time enough to take action at some future time, and that it was then agreed not to do anything about it until after May 16th, 1872; and that thereafter he, McDonald, was not notified of any meeting of the committee to hire the plaintiff, and that he had no knowledge of such hiring until June, 1872.

The court instructed the jury that the majority of the committee could make a valid contract, if all the committee were notified to be present at and for the purpose of making the same, or if two of the committee were authorized by the third to make the contract, or if the same was made with his knowledge and consent, but not otherwise. After having retired, the jury returned into court for instructions whether the contract in question would be valid without the assent of the third member of the committee. The court again instructed them that it would, if the third member was notified and requested to act, and authorized the others to act without him; that there was no necessity of the committee assembling in a formal meeting at any particular place; that they were not a board with a clerk, having stated times and places of meeting; and that if they all consented to and had knowledge of the acts of the majority, that was sufficient, even if the third member had no notice to be present at the time the contract was executed.

After being out several hours, the jury came into court with a verdict in favor of the plaintiff for the sum of $967.50. The court requested the jury to consider the matter further in the morning.

At the opening of the court the next morning, after the jury had been called, the court called their attention to McDonald's testimony, reading from the minutes of the court, that on Sunday evening before May 16th, 1872, at King's house, he and King and Reddy had a conversation about hiring the plaintiff for the then ensuing year, and that they asked him, McDonald, if it would not be advisable to hire the plaintiff for another year, and that he said he thought it would be time enough to take action at some future time. The judge then said to them that "it was not claimed by the defendants that they did sign the contract till after May 16th, 1872; and that if McDonald was then in fact consulted by the other members of the committee on the subject of hiring the plaintiff, and the views of the majority were known to him, and they postponed signing the contract until after May 16th, 1872, the contract made by the majority under these

circumstances would be valid, so far as the question of knowledge of and notice to the third committee-man was concerned."

The jury then retired, and afterwards came into court with a verdict in favor of the plaintiff to recover of the defendants the sum of $1,548, and his costs.

We accept, as substantially correct, the charge as given to the jury the first and second times; but the third time the instructions based on McDonald's testimony were, we think, liable to mislead the jury, and to give an impression that even upon that testimony there was no good defence. A reference to the defendants' evidence will show that the facts stated by the other two members, upon which McDonald's consent was predicated, were directly denied by him. And in the Sunday evening conversation, which the judge recited to the jury, when McDonald was asked by Reddy if it would not be advisable to hire the plaintiff another year, he replied that it would be time enough to take action at some future time; and he states that *it was then agreed* not to do anything about it until after May 16th, 1872; and that thereafter he was not notified of any meeting of the committee to hire the plaintiff and had no knowledge of such hiring until June, 1872. We suppose the court read to the jury in substance all that was material in this testimony, including the last statement as to the agreement not to do anything about the matter until after May 16th, although this sentence is omitted in connection with the charge. In preparing the motion it may have been the intention to repeat in the record only so much of this interview, elsewhere given more in detail, as would suffice to identify and suggest the testimony relied upon. But whether or not this last clause was read is not a matter of controlling importance. It seems clear that the jury would understand that the last instructions were predicated upon this testimony of McDonald.

In the previous instructions the jury were correctly told, in substance, that the contract as made by the majority was valid, provided McDonald authorized them to make it, or had notice to be present for the purpose of making it, or conse' 'd

to it after it was made. But the finding of the fact of such authority, notice or consent was left wholly for the jury, without requiring them to weigh the evidence in any arbitrary scales erected by the court.

But in this last instruction a new and binding rule of law was prescribed, by which the jury were to determine what sort of notice or consent was required; and this rule makes it absolutely conclusive against the defendants, if three things are found, namely, the fact of the consultation, the knowledge of the views of the majority, and the postponement of the signing of the contract.

But the effect of these things should be made to depend, not on the bare facts as outlined—not on the mere fact of a consultation, nor on the fact that the views of the majority were known—but rather upon what that consultation really was, and what particular views of the majority were disclosed.

If the consultation was what McDonald's testimony made it, then surely he authorized nothing and consented to nothing save the postponement. And when he said it would be time enough to take action at some future time, the views of the majority finally accorded with his own, so far that it was agreed not to do anything about the matter till after May 16th. And then, it seems to us, he had a right to consider the whole matter postponed, so as to remain an open question to be taken up *de novo*.

And even if we assume that he knew that the previous views of the majority were favorable to hiring the plaintiff, he had a right to suppose that they might still be open to the contrary conviction when the subject should again come up for discussion.

It is obvious therefore that there is a vast difference between such a consultation as McDonald testified to, and the existence of such facts as would charge him with notice to participate in the making of the contract.

It may be suggested that the court may have intended to have the jury observe merely that McDonald admitted the fact of a consultation with the majority a short time prior to the 16th of May, while it was assumed that the jury would

find that its character and subject matter were different from what his testimony made it; and that the testimony of the other members would be resorted to to show what views the majority had communicated to him on this subject; and that he knew that a contract had already been made and committed to writing, and that its formal execution was the only matter to be postponed. If this was the intention the charge surely should have been more explicit. As it stands it assumes a matter to have been proved as to which the evidence was conflicting.

But, assuming that the last charge was erroneous, the plaintiff seeks to obviate its effect, as a ground for a new trial, by claiming that it produced no injury.

This claim is predicated solely on the fact that the jury had previously reported a verdict for the plaintiff for $967.50, which the court did not accept. But the verdict became a nullity by its non-acceptance and the remanding of the case to the jury, and it was then competent for the jury to find a contrary verdict. It is said however that the first verdict indicated that the jury believed a valid contract had been made, and that though possible, it was not probable that they would find otherwise. But the verdict that preceded the last charge was very much smaller in amount than that which followed, indicating, or at least suggesting, that it may have resulted from a compromise among the members of the jury. And if the jury regarded the final instructions as indicating the opinion of the court that the defendants on their own showing had no case, a speedy verdict for the full amount claimed was quite a natural result. On the whole therefore we think it safer to hold that the defendants were aggrieved by the charge as last made.

In arriving at the conclusion that the charge of the court as last made was erroneous, we have hitherto assumed, without stopping to discuss or vindicate the principle, that a majority of the school district committee could not make a valid contract without being authorized by the others, or first giving notice and opportunity to the others to participate in the matter. This principle was not much controverted in the

argument for the plaintiff. We notice however that the plaintiff's brief claims the rule of law to be that, while "an authority given for a private purpose to a number of individuals is joint, and must be strictly pursued, yet if a power be of a public nature the majority may perform the act delegated, the power being considered as joint or several." The above is a citation from the opinion in *Patterson* v. *Leavitt*, 4 Conn., 50, and the point made is worthy of some discussion, for, if a majority without notice to the others could make a binding contract, then it follows that the charge of the court as first made was too favorable for the defendant, and as last made no possible injury could result from it.

The case cited simply involved the question whether two out of three arbitrators, agreed upon by the parties, could make a valid award, where the submission contained no provision authorizing it, and the court held that the award by two was void. In giving the opinion the distinction between powers of a private and a public nature is stated as above. But in thus briefly stating the distinction between these two widely separated classes of acts, there was no occasion to make still other distinctions applicable only to the last class, or to define the rule under which the majority could perform the act.

The rule of the common law undoubtedly is that public agents may act by majorities, provided all are present or have proper notice to be present.

This principle was sanctioned in *Middletown* v. *Berlin*, 18 Conn., 189, and applied to the act of assessors in making a tax list. The decision even went beyond the rule, and required the action of the entire board as an aggregate body. It was also sanctioned in *Groton and Ledyard* v. *Hurlburt*, 22 Conn., 178, and applied to county commissioners in the survey and lay-out of a highway. The same principle was also approved in *Martin* v. *Lemon*, 26 Conn., 192, and applied to the act of a committee in removing encroachments on a highway. Also in *Guyer* v. *Stratton*, 29 Conn., 421, where it was applied to a notice signed by fence-viewers of the insufficiency of a fence.

In *Gallup* v. *Tracy*, 25 Conn., 10, the action of a majority of a committee to stake out oyster grounds was called in question. ELLSWORTH, J., in giving the opinion, said he made no question that the general rule was as we have stated it above, but he made an exception in that case, on account of the nature and office of the committee, and the fact that they could not be considered as a board.

It appears from the references we have made that all the cases in this state are consistent with the general rule of the common law, unless *Gallup* v. *Tracy* is to be regarded as an exception, and that case recognizes the general rule while it fails to apply the principle.

It seems to us that the same principle ought to apply to the office of school district committee. Their duties are important and require the exercise of sound judgment and discretion, and their action in the employment of teachers may be attended with important consequences, both pecuniary and moral. Where several persons are appointed it would seem to be for the very purpose of giving the district the benefit of the combined judgment and good sense of all; and although the law calls them public agents, yet in fact they also sustain towards the district, in some respects, the relation of private agents. It is always expected that they will so act as fairly to represent the wishes and wants of the district.

The next question which we will consider relates to the exclusion of the evidence, upon objection of the plaintiff, of what was said and done at the school meeting of May 16th, the ground of objection being that the meeting was not a legal one because not legally warned. If anything took place on that occasion to furnish a motive for fraudulent collusion and for the hasty and secret signing of the contract, the defendants ought to have been permitted to show it, provided it was the purpose to follow it with evidence of the plaintiff's knowledge, and some resulting act relative to the contract as the fruit of such motive. The defendants in first offering to prove what was said and done, and in subsequently asking the plaintiff if he was not informed of it the next morning after the meeting, undoubtedly had all this in contemplation. It

appears from the record that, in connection with the offer of the first mentioned evidence, the plaintiff was allowed in some way to assert that he had no knowledge of the matter till after May 25th, with a view to render the testimony inadmissible. If this is a correct construction of the finding it furnishes an additional reason why the defendants should have been permitted to ask the plaintiff if he was not informed of the matter the next morning.

The particular things said and done at the school meeting are not very fully disclosed in the motion. It appears however that opposition to the employment of the plaintiff another year was the prominent thing, and if this was expressed by the acts and votes of such a number of the voters of the district as would indicate a probability that the district under a legal warning might absolutely prevent the employment of the plaintiff another year, it would, being known to him, have furnished a strong motive for collusion with the friendly members of the committee, and for hastening the execution and delivery of the contract. We think therefore that the court erred in excluding the testimony.

The defendants in this case also filed a motion in error, founded upon the decision of the court in overruling the motion in arrest of judgment.

The motion in arrest was not on account of any intrinsic matter apparent on the record which would render a judgment in pursuance of the verdict erroneous; nor for any radical fault in the issue or in the verdict; nor for any cause *dehors* the record coming to the knowledge of the party making the motion after the verdict. But the sole ground for the arrest of judgment is the alleged abolition of the defendant district, arising after suit brought and before the final trial, of which no mention was made in any of the pleadings nor in any way during the trial, although it was a matter peculiarly within the knowledge of the defendants, and might have been pleaded in bar of the further maintenance of the suit, upon which plea the court would have passed on the sufficiency or the truth of the allegations, and so the matter might properly have become a part of the record and subject to a motion in

error. Without discussing the merits of the question intended to be presented, we hold that there was no error in overruling the motion in arrest.

A new trial is advised.

In this opinion the other judges concurred.