KAVANAUGH, Respondent, vs. CITY OF WAUSAU, Appellant.

*February 5—February 23, 1904.*

*Municipal corporations: Committee of common council: Duties: Meetings: Validity of committee's action: Direction of verdict: Presumptions: Rebuttal: Ratification: Contracts: Warranty: Evidence of breach: Remoteness: Instructions to jury: Prejudicial error.*

1. The duties of a committee of a common council appointed not only to buy a horse, but to pass upon the suitableness of the animal for the purpose for which it is intended, are more than merely ministerial in character.

2. In such case, the action of two members of a committee of three, in contracting for the horse without notice to their associate, or opportunity for him to participate in the matter, is invalid, and, in an action against the city for the purchase price for the horse, there being no evidence of subsequent ratification, a motion for a directed verdict should be granted.

3. Where the testimony was all one way, that two members of a committee of three met without previous notice or concurrence in the matter, and transacted the business of a committee without the other member knowing that any such transaction was in contemplation, a presumption of notice to the non-participating member of the committee, or consent by him to the act of his asociates, is completely rebutted.

4. In an action for the purchase price of a horse, alleged to have been purchased from plaintiff by two members of a committee of three appointed by a common council, without previous notice to or concurrence by the non-participating member, the disallowance of the claim by the council upon the report of the comptroller that the horse was not as represented, is not a ratification of the purchase, unless the council, when such action was taken, knew the facts rendering the purchase invalid.

5. Where the unsound condition of a horse at the time of purchase is vital to the defense of breach of warranty, it is error to exclude evidence, tending to show, that the same unsoundness existed nine months prior to the purchase and continuously thereafter down to the sale.

6. In such case, the evidence of the unsound condition at the early date cannot be said to be too remote.

7. Where a decision in plaintiff's favor depends largely on the weight to be given to his testimony, it is prejudicial error to

refuse a requested instruction, in substance, that in judging of the credibility of plaintiff's testimony, the jury may properly consider his interest in the result of the trial, the temptation under the circumstances to color his testimony favorably to himself, and everything bearing on the subject, and give such evidence such weight only as in their judgment it was entitled to, and that a like test should be applied to the evidence of each of the witnesses who testified in the case, unless such principle is embodied in the general charge.

8. Such instruction does not invade the province of the jury, or violate the rule that, in instructions to the jury, the evidence of one witness should not be singled out and given prominence by special comment thereon.

APPEAL from a judgment of the circuit court for Marathon county: W. C. SILVERTHORN, Circuit Judge. *Reversed.*

Action to recover the purchase price of a horse alleged to have been sold and delivered to defendant by plaintiff, for .$100. Plaintiff filed his claim with the city clerk, for action by defendant's common council. The claim was disallowed upon the report of the comptroller that the horse was not as represented. An appeal was then taken to the circuit court, where formal pleadings were filed. Plaintiff alleged a sale and delivery of the horse to the city at the agreed price of $100, the filing of his claim therefor, and the disallowance thereof as before stated. Defendant answered by general denial, and further that a committee of the council consisting of three members thereof was authorized to purchase a horse for the city; that two of them, without any notification to the other of a meeting to consider the matter, negotiated with the plaintiff for the purchase of the horse in question, and made such purchase so far as they had authority to do so, the other member of the committee not being consulted in the matter or having any notice of the proceeding; that they acted relying upon representations made by plaintiff that the horse was right in every way, that there was nothing the matter with him, and that he was a good animal for driving purposes; that soon after the animal was delivered the discovery

was made that he was afflicted with chronic rheumatism, tender feet, and diseased hoofs, and was totally unfit for driving purposes or for the purpose for which the purchase was made; and that thereupon it was returned to plaintiff, everything being done within the power of the city to do to rescind the transaction. Further facts were alleged in a separate defense showing a fraudulent warranty and breach thereof, and a rescission of the trade on that ground. A separate defense was stated to the effect that no valid contract between plaintiff and the city for the purchase of the horse was made.

Upon the trial the evidence was undisputed that a committee was empowered to buy a horse as alleged in the answer, and that two of such committee acted in the matter without any notification to the other of any meeting for that purpose, and without any participation by such other in the matter, as alleged. Also, that seasonably after the horse was delivered and the discovery made that he was infirm and not fit for driving purposes, it was returned to plaintiff as stated; also that the common council rejected plaintiff's claim upon the report of the comptroller that the horse was not as represented. There was no proof that the council knew at the time of such rejection the facts in regard to the arrangement having been made with plaintiff by two members of the committee only, without notice to their associate. There was evidence tending to prove the warranty pleaded, and of its fraudulent character; also that no meeting of the committee was called to take action in respect to the purchase of the horse, and that the arrangement was made with plaintiff at a casual meeting between him and two members of the committee.

Evidence of a competent witness was offered by defendant, to the effect that about nine months prior to the alleged sale the horse was afflicted with the infirmities charged in the complaint, proper questions in that regard being asked.

The evidence was ruled out upon the ground that the time was too remote, the court remarking that it "would not feel authorized to say because the mare had rheumatism in August that she had it the following May." Counsel for defendant then offered to prove the condition of the horse at the early date; that it was then afflicted with chronic rheumatism, and that its condition in that respect continued down to the time of the transaction in question. The evidence was ruled out as incompetent, immaterial and too remote.

At the close of the evidence defendant's counsel moved the court for a directed verdict, which was overruled. The case was submitted to the jury for determination on all the issues. The court refused to give an instruction requested by defendant's counsel to the effect that it was proper for the jury, in weighing plaintiff's evidence, to consider his interest in the result and all other circumstances bearing on his credibility, and that they should subject the testimony of each witness to a like test in determining its credibility and weight. The verdict was for the plaintiff. Judgment was rendered accordingly. Exceptions were duly taken to the rulings discussed in the opinion.

*M. B. Rosenberry,* for the appellant.

For the respondent there was a brief by *Brown, Pradt & Genrich,* and oral argument by *Neal Brown.*

MARSHALL, J. The motion of appellant's counsel for a verdict was based on the theory that the action of two members of the committee, in contracting for the horse without notice to their associate or opportunity for him to participate in the matter, was not valid. The motion was overruled on the theory that a committee of a governing body intrusted to do a particular thing of a public nature, though requiring the exercise of judgment, may act when a majority of its members are present and concur; and that when action is thus taken there is a conclusive presumption that all essen-

tials to the validity thereof have been duly complied with.
We confess unfamiliarity with such a rule  True, a com-
mittee may act by a majority of its members in such a case
as the one in question, but only when all members have due
opportunity to be present, and in the absence of evidence to
the contrary, the presumption is that there was such oppor-
tunity; but the mere circumstance of such a majority action
in the absence of the minority raises no conclusive presump-
tion that such minority was duly notified and could have been
present by making a reasonable effort to do so, or that such
minority consented.   There are authorities to the effect that
such a committee, empowered to perform some mere minis-
terial duty, may act validly by concert of a majority regard-
less of notice to the minority; and some cases may be found—
counsel for respondent discovered one of them—supporting
the validity of the act of the majority of a committee in a
matter requiring the exercise of judgment without oppor-
tunity for the minority to participate in the proceedings.  But
such authorities are rare.   They are based on exceptional
circumstances and probably in the main, if not universally,
recognize the general rule to be that such a committee can
act validly only by a majority vote when all the members are
either present or have been notified and given opportunity to
be present.   In the case cited by counsel, *Gallup v. Tracy,*
25 Conn. 10, the court said:

"We make no question that the general principle of law
is that public agents may act by majorities where all are pres-
ent or when all have notice to be present, and generally not
otherwise."

Many cases might be cited to the same effect, mostly quite
ancient, since the rule is so elementary that it is rarely called
in question with a sufficient degree of success to require a re-
statement of it in published decisions.   We will refer to the
following: *Downing v. Rugar,* 21 Wend. 178; *Grindley v.
Barker,* 1 Bos. & Pull. 229; *Dobson v. Fussy,* 7 Bing. 305;

*Green v. Miller,* 6 Johns. 39; *Groton v. Hurlburt,* 22 Conn. 178; *Martin v. Lemon,* 26 Conn. 192; *Wilson v. Waltersville School Dist.* 46 Conn. 400; *Keeler v. Frost,* 22 Barb. 400; *Perry v. Tynen,* 22 Barb. 137; 1 Dillon, Mun. Corp. § 283 and note.

The gist of what the court said in *Perry v. Tynen,* as embodied in the syllabus, is in harmony with the language of all courts in speaking on the subject above discussed:

"In cases of the delegation of a public authority to three or more persons, the authority conferred may be exercised and performed by a majority of the whole number. If the act to be done by virtue of such public authority requires the exercise of discretion and judgment—i. e., if it is a judicial act—the persons to whom the authority is delegated must meet and confer together, and be present when the act is performed; or at least a majority must meet, confer, and be present, after all have been notified to attend."

That the duty which devolved upon the committee in question was other than merely ministerial in character, seems evident. They were required, not only to buy a horse, but to select a horse to be bought, passing upon the suitableness of the animal for the purposes for which it was intended.

The learned counsel for respondent seem to have labored industriously to discover support for the view entertained by the learned circuit judge, without success. The only authority cited to our attention applying any such view is *Gallup v. Tracy,* 25 Conn. 10, and that, as we have seen, does not support it. In *Wilson v. Waltersville School Dist. supra,* it is said that of the numerous decisions of the supreme court of Connecticut on the subject, *Gallup v. Tracy* stands alone in violating the common-law doctrine declared in *Martin v. Lemon.* Counsel lay great stress on *Downing v. Rugar,* 21 Wend. 178, but that, though an extreme case, goes no further than to hold that in circumstances like those before us the presumption that the absent member consented to the act of his associates should prevail in the absence of

testimony to the contrary. The testimony here is all one way that two members of the committee met without previous notice or concurrence in the matter, and made the trade without the other member of the committee knowing that any such transaction was in contemplation. In the face of that, the presumption of notice to the nonparticipating member of the committee, or consent by him to the act of his associates, is obviously most completely rebutted. The absent one could not have been notified of a meeting that was never called. He could not have consented to an action which was not official and of which he had no knowledge whatever. To hold in such circumstances that there is a conclusive presumption of concurrence by the absent member of the committee, as did the trial court, would open the door wide for the perpetration of fraud upon municipalities by committees of their governing bodies, which, in the very nature of things, must be entrusted with the performance of many duties of a discretionary character in business transactions. The ruling of the trial court was clearly wrong. The motion for a directed verdict should have been granted, at least unless there was some warrant for holding that the unauthorized act of the two members of the committee was subsequently ratified.

It does not appear from the judge's charge to the jury that the idea of ratification was indulged in upon the trial. The cause was rested solely upon the theory that if a majority of the committee agreed with respondent as to the purchase of the horse, that was sufficient on the question of whether a valid contract in that regard was made or not, irrespective of whether the third member of the committee had any opportunity to consider the matter. The learned judge, consistent with his decision on the motion to direct a verdict, so erroneously instructed the jury. No claim is now made of any ratification by the committee of the unauthorized transaction by the two members, but it is suggested that the dis-

allowance of the claim by the common council upon the report of the comptroller that the horse was not as represented, was in effect a ratification of the contract and rescission thereof. There would be much force in that if there was evidence showing that the common council, when such action was taken knew the facts rendering the transaction with respondent invalid. It is elementary that the infirmities as to the validity of a contract made by one ostensibly for and upon the authority of another must be known, actually or constructively, to such other, else his conduct in respect thereto cannot be construed as a ratification thereof. That rules this case on the subject in favor of appellant.

Complaint is made because of the exclusion of evidence regarding the condition of the horse some nine months prior to the transaction in question, upon the ground that the trial judge "would not feel authorized to say because the mare had rheumatism in August that she had it the following May." It seems that the learned judge fully appreciated that evidence of the condition of the horse as to soundness at the time of the trade was vital to the defense of breach of warranty, and that the evidence rejected was relevant unless the time involved was too remote. Whether such evidence was competent was a matter for the court to decide. Its determination could not be disturbed if reached legitimately, unless manifestly wrong. *Emery v. State,* 101 Wis. 627, 647, 78 N. W. 145. The question of competency respecting evidence is always one of law to be solved by the court, while the questions of the credibility and weight of evidence are matters of fact for the jury. If the test to be applied in determining the first question was whether the evidence, if true, would in the mind of the trial judge establish the fact in controversy, it is obvious that the court, in ruling thereon, would often be called upon to determine questions of credibility and weight. Such is not the test. If evidence, in the judgment of the trial court, if true, will tend within reason-

able probabilities to establish the matter in dispute according to the claim of the party offering it, and there is a reasonable probability of the truthfulness thereof, the true test of competency is satisfied and the evidence should be admitted. Best, Evidence (International ed.) § 132. The court's decision in such matter, following the proper test, is regarded as a verity unless manifestly wrong; but erroneous, of course, when an improper test is applied. The evidence as to the condition of the horse at some time prior to the alleged sale was competent if not so remote but that, within reasonable probabilities, it tended to show the animal's condition at the time of the sale. That was not passed upon by the trial judge in the ruling complained of. If it had been, and unfavorably to appellant, the decision might not appear so manifestly wrong as to warrant disturbing it. Evidence should have been produced in order to enable the trial judge to rule intelligently, tending to show that if the horse was affected with rheumatism at the early date that fact would tend to show that the manifestations at the time of or immediately after the alleged sale were attributable to the same cause. However, when appellant's counsel offered to show that the horse was afflicted with rheumatism at the early date and continuously thereafter down to the time of the sale, and was not permitted to do so, error was clearly committed of a most serious character. Such evidence not only tended to show that the horse was unsound to a degree rendering it unfit for the use intended by appellant, contrary to respondent's representations in that regard, but that he corruptly misrepresented the condition of the horse.

The instruction requested, to the effect that in judging of the credibility of plaintiff's evidence the jury might properly consider his interest in the result of the trial, the temptation under the circumstances to color his testimony favorably to himself, and everything bearing on the subject, and give such evidence such weight only as in their judgment it was·

entitled to, and that a like test should be applied to evidence of each of the witnesses who testified in the case, was a correct statement of a legal principle. It was not only proper for the jury to consider the interest of plaintiff in the result of the trial, and every other circumstance appearing in the case reasonably calculated, in any view thereof, to throw light upon its credibility and weight, and to subject the evidence of each witness who testified to a like test, but it was their duty to do so; and the instruction might properly have been framed so as not to convey the idea to the jury that it was competent for them, in their discretion, to omit such test. The instruction being correct in principle applicable to the case—peculiarly so since a decision in respondent's favor depended largely upon the weight to be given to his evidence—and such principle not being in any respect embodied in the general charge, prejudicial error was committed in refusing it. Framed as it was, so as to indicate to the jury that the evidence of each witness should be subjected to the same test as the one applied to that of the plaintiff in determining the weight to be given thereto, it did not invade the province of the jury or violate the rule that the evidence of one witness should not be, in the instructions, singled out and given prominence by special comment thereon. *Chicago & A. R. Co. v. Anderson,* 166 Ill. 572, 46 N. E. 1125; *Pennsylvania Co. v. Versten,* 140 Ill. 637, 30 N. E. 540; *McDonell v. Rifle Boom Co.* 71 Mich. 61, 38 N. W. 681; *People v. Knapp,* 71 Cal. 1, 11 Pac. 793.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.