### LUCIUS E. WALDO *vs.* TOWN OF PORTLAND.

A town in August 1863 passed certain votes appropriating money to such of its
citizens as should be drafted by the United States for military service under a
then pending call. The town and its officers were soon after enjoined against
action under the votes. In September the town passed other votes appropri-
ating money for the same purpose, and appointed a committee to expend it.
One of the committee did not accept, the others acted and gave an order to *B*,

who had been drafted and paid his commutation, and he assigned it to the plaintiff. In August 1864, the town ratified the votes of September 1863, and all doings under them, pursuant to the act of November 1863, authorizing towns to ratify such votes. But during all the time the injunction was undissolved and in force, and it was made permanent in December 1864, with the collusive assent of the selectmen. Held — 1. That it was competent for the town, under the authority conferred by the act of November 1863, to approve and ratify the votes of September 1863, notwithstanding the town was then under injunction, and that by such ratification the votes and doings under them became binding upon the town. 2. That an order signed by all the committee who accepted their appointment was sufficiently· executed. 3. That the existence of the permanent injunction thus collusively obtained, constituted no defence against an action on the order.

ASSUMPSIT, brought against the town of Portland on the following order, held by the plaintiff by assignment from the original payee.

"Portland Town Treasury. Conscript Relief Fund. No. 9. Amount $250. Portland, October, 2, 1863. Treasurer of the town of Portland: Pay to Walter Button, or bearer, two hundred and fifty dollars, on account of Conscript Relief Fund, by virtue of certain votes passed in town meeting, September 30th, 1863. Alfred Hall, G. W. Pettis, Rufus Sears, Committee."

The case was tried in the superior court on the general issue, with notice, closed to the court, and the following facts were found by the court.

Under the act of Congress for enrolling and calling out the national forces, passed March 3d, 1863, a draft was had in the second congressional district of this state, on the 5th day of September, 1863, at which time Walter Button, an inhabitant of the town of Portland, was, among others, legally drafted into the military service of the United States, and was subsequently warned to report as such drafted man to the rendezvous for drafted men at New Haven, and did so report, and was examined by the board of enrollment and found and held liable to military service in the army of the United States. On the 5th day of August, 1863, in anticipation of this draft, a town meeting of the town of Portland was held, in pursuance of a call for the same duly made, at which meeting the following votes were passed.

" 1.   *Voted* that the selectmen of this town be and they are hereby authorized and directed to draw orders on the treasurer of the town, in sums not exceeding $300, in favor of such persons as have been or may be drafted from this town into the military service of the United States, under the recent act of Congress, "enrolling and calling out the national forces," payable and to be paid to such persons after they shall have exhibited satisfactory proof to the selectmen that they are able bodied men and liable to such military service. ·

" 2.   *Voted* that the town treasurer be and he is hereby authorized and directed to pay all such orders as may be drawn by said selectmen in pursuance of the power and authority contained in the foregoing vote.

" 3.   *Voted* that a sum not exceeding the sum of $15,000 be, and the same is hereby appropriated by the town of Portland, for the purpose of defraying all the necessary expenses which may be incurred by the town under the provisions of the two preceding votes of this special town meeting."

Afterwards, on the 22d of September, 1863, Noah Tryon, of the town of Glastenbury, but a tax payer in the town of Portland and a holder of real estate therein, brought a bill to the then next term of the superior court for Middlesex county, against the town of Portland, praying that the town might be enjoined against taking any action under the foregoing votes, and at the September term of the superior court then in session in the county of Middlesex, on the motion of said Tryon, a temporary injunction was granted, enjoining the town as prayed for in the petition.  On the 30th day of September, 1863, another town meeting was holden, at which, after voting that a committee of the town be authorized to draw orders in favor of drafted men who in their opinion needed such aid, to an amount not exceeding $300 to any one person, the town passed the following votes:

" *Voted* to appoint a committee of four, to draw orders on the town treasurer, or to borrow money to assist drafted men, as set forth in the foregoing votes of this meeting.

" *Voted* to appoint on said committee Alfred Hall, Asaph Strong, Geo. W. Pettis, and Rufus Sears."

Under these votes the order in question was given to Walter Button, who, as before stated, had been regularly drafted and held liable to service, for the purpose of enabling him to procure a substitute or to effect a commutation, the order being signed by all the members of the committee except Asaph Strong, who declined to act as a member of the committee, and did not so act in any case. The said Button on the same day assigned the order to the plaintiff, in order to obtain at once the money to purchase a substitute or commutation, and the plaintiff has ever since been a bona-fide holder of the order. On the 29th of March, 1865, and before bringing this suit, the plaintiff demanded payment of the order from the town of Portland and payment was refused. After the town meeting last mentioned, and after the committee had issued the order to Button, and other orders under the same votes, proceedings were instituted against the officers of the town for contempt of the injunction, and upon a hearing afterwards had before the superior court, at the December term 1863 thereof, they were adjudged to have violated the injunction, and fined for contempt of court. On the 18th day of January, 1864, under an act of the legislature, approved November 13th, 1863, a special town meeting of the town of Portland was held in pursuance of a call issued January 8th, 1864, which meeting was adjourned from time to time until the 13th day of August, 1864, and at a meeting held on that day votes were passed ratifying and confirming the previous action of the town under the votes passed on the 30th day of September, 1863. The act of the legislature here referred to is given in full in the report of the case of *Baldwin* v. *Town of North Branford*, 32 Conn., 49. The case of *Tryon* v. *The Town of Portland* was duly assigned for trial at the December term of the superior court, held at Middletown, in the year 1864, and counsel appeared on behalf of the town of Portland, having been previously regularly retained by the town to defend the cause, but before the cause was reached for trial, and during the term, the counsel of the town were each served with a notice, signed by the selectmen, requesting them not to appear in behalf of the town, on the receipt of

which notice they withdrew their appearance, and afterwards, during the same term, the town consented to a decree permanently enjoining them from acting under any of the votes before mentioned. At the time the plaintiff purchased the order in suit he knew that a temporary injunction had been issued, and he was then and ever since has been an inhabitant of Portland.

The plaintiff on the trial objected to the admission in evidence of the record in the case of *Tryon* v. *The Town of Portland*, on the ground that the same was not admissible against him, as he was not a party thereto, and because the permanent injunction against the town was granted with the collusive consent of the town. The court found the facts on which the objection was founded, but received the evidence and reserved the question as to its admissibility. The plaintiff also objected to the evidence offered to prove that he had notice of the temporary injunction, on the ground that the same was irrelevant, but the court received the evidence and reserved the question of its admissibility.

At the December term, 1864, of the superior court, after the counsel of the town of Portland had been dismissed as before stated, Alfred Hall, Esq., who was one of the counsel thus dismissed, made a motion for liberty to appear and defend on behalf of the present plaintiff and other holders of orders given in the same way, and also for liberty to appear and defend in his capacity as an inhabitant of and a tax payer in the town of Portland, but both motions were over-ruled by the court on the ground that they were not made within the time prescribed by the rules of the court.

The said Button, with the money received from the plaintiff and other money of his own to make up the sum of three hundred dollars, on the 5th of October 1863 legally purchased his commutation from the draft, and received his discharge from military service under the same, and but for the relief afforded by the town he would have entered the service as a drafted man. At the time said Button took the order he knew of the votes of the town of September 30th, 1863, and took the order on the faith of the same. And at

the time the plaintiff took the order by assignment from Button he knew of these votes and purchased the order on the faith of the same. The plaintiff's suit was commenced March 30th, 1865.

The evidence offered by the plaintiff to prove the foregoing facts was objected to by the defendants for various reasons, and particularly for the reason that the action of the committee was not authorized either by law or by the votes and proceedings of the town.

The question whether the plaintiff was entitled on the facts found to recover, and all the questions arising upon the finding of facts, were reserved by the superior court for the advice of this court.

*T. C. Perkins* and *McFarland*, with whom was *A. Hall*, for the plaintiff.

. It is admitted that the votes under which the order in question was drawn were in their inception illegal; but they were validated by the subsequent ratifying votes of August 1864, passed under authority of the act of the legislature of November 13, 1863. They were also validated by the act of 1865. The legislature had full power to pass such confirming acts and thereby to validate those votes. *Booth* v. *Town of Woodbury*, 32 Conn., 118. The important question in the case is, did the injunction prevent the acts of the Assembly from operating on the order and giving it validity? The injunction was inadmissible in evidence, the plaintiff being no party to it. That he was an inhabitant of the town did not make him a party to it, so that he was bound by the finding of facts in the case. It might subject him to certain liabilities as an inhabitant, but nothing more. He tried to become a party to the injunction, but could not. The ground of refusal was that he was too late. But he applied as soon as the town withdrew its appearance. There was no reason for his appearing earlier. The claim on its face is most inequitable. It is substantially this:—that we should lose our claim because there existed an *ex parte* injunction to which the plaintiff was no party, and against which he could not appear and be heard.

The final injunction was issued by collusion of the parties, namely, the town and a tax payer, both interested against the present plaintiff, and to prevent any future question by any one both parties executed a full release of errors. It was not a *lis pendens* of which this plaintiff was bound to take notice. *King* v. *Bill*, 28 Conn., 593. The acts of the legislature were intended to cover all such votes and orders, whatever was the ground of the liability. *Booth* v. *Town of Woodbury*, 32 Conn., 118. The legislature had power to give validity to these acts of the town, notwithstanding the injunction It was not setting aside a judgment. It was merely carrying out the principle established in *Goshen* v. *Stonington*, 4 Conn., 209. It was so held in *Wetmore* v. *Low*, 34 Barb., 515, and *State of Pennsylvania* v. *Wheeling and Belmont Bridge Co.*, 18 How., 421. It would be most extraordinary if a combination between the town and the tax payers and a full discharge of errors could defeat a creditor of the town. If the town had any remedy it would be by injunction against this suit. But no such injunction could now be obtained after the confirming acts. The very proceedings in the process for contempt show that the paper is valid against the town. The committee are punished for doing an effective act ; not for attempting to do something inoperative.

*Tyler* and *Culver*, for defendants.

At the time the plaintiff's suit was commenced, the defendants were not legally bound to pay the order in question. The act of November 1863 did not authorize the defendants to ratify the votes of September 30, 1863. It is not the case contemplated by that statute. Nor did the act of 1865 validate the votes. If it be said that the phrase, "all votes passed and all acts done, &c.," validated the doings of the town meeting of September 30, 1863, the answer is that the votes expressly provided that if any orders were given not less than four persons should sign them. Being signed by three only, the orders were in no sense the " acts of the town." The distinction is that a public committee, appointed under a public law, may act by a majority ; but where it is a mere private

power to be executed all must act. Here the act to be done, the drawing of orders on the town treasurer, was clearly the exercise of a private power, not of a public duty. The legislature intended by "acts" such as are done in the ordinary mode. Selectmen ordinarily draw orders on treasurers of towns, and that under authority of the statute, not by a special authority from the town. *Patterson* v. *Leavitt*, 4 Conn., 50 ; *Green* v. *Miller*, 6 Johns., 39 ; *Towne* v. *Jaquith*, 6 Mass., 46. The finding that the committee gave Button the order to enable him to purchase a substitute or commutation from draft, is of no consequence, as they were not authorized to do any such thing. The statute relied on does not validate orders ; and the order given for such purpose, not being authorized by the votes, of course is not an "act" of the town. The order being drawn upon a specific fund, the plaintiff was bound to show that such a fund existed. It is found that none such ever existed. As it appears there never was any legal consideration for the order, it follows that the defendants cannot be compelled to pay it, though it might be lawful for them so to do. None of the acts provide that the town shall pay mere gratuities. Especially the defendants cannot be compelled, nor have they the right, to pay the order so long as the injunction remains in force. *Baldwin* v. *Town of North Branford*, 32 Conn., 55. The plaintiff had actual knowledge of the existence of the temporary injunction, and as an inhabitant of the town was a party to the suit. Of course he is bound by the decree. 1 Swift Dig., 753 ; *McLoud* v. *Selby*, 10 Conn., 390 ; *Beardsley* v. *Smith*, 16 id., 380 ; *Town of Union* v. *Crawford*, 19 id., 333.

BUTLER, J.   1. In this case we are satisfied that all the votes passed at the meeting of September 30, 1863, were ratified and made legal and binding upon the town by the act of November 13, 1863, and the ratification of August 13, 1864, the temporary injunction notwithstanding. It is not necessary to assign our reasons at length. The whole subject, and every question involved here, were fully discussed in some or all of the cases heretofore decided in this court, of *Booth* v. *Woodbury*, *Baldwin* v. *North Branford*, and *Webster* v. *Har-*

*winton.* It is sufficient to say that the injunction did not make them any more illegal and invalid than they would have been if it had not been granted.

2. Nor can the objection that the order was not signed by all the committee prevail. It was signed by *all* who *accepted* the appointment and consented to act, and *they* constituted the committee. Moreover, within the principles recognized by this court in *Gallup* v. *Tracy,* 25 Conn., 10, a majority could act, and those who signed were a majority of those appointed.

3. The fact that the town was under injunction not to pay, is no defence to this action. The original temporary injunction was superseded by a permanent one, obtained by a new board of selectmen *collusively, after* the votes were ratified, and when it was the duty of the town to procure a dissolution of the temporary injunction, and fulfill the obligation assumed. That permanent injunction, thus obtained, although operative upon individual officers until dissolved, cannot defeat or affect the *liability* of the town to the plaintiff, nor his *right* to a judgment. The court on application will dissolve it at once.

4. Button paid his commutation to the government on the faith of the order in question, and with that payment, presumptively, the government procured a substitute to serve in his place. The *promise* of the town, for such in effect was the transaction, that if drafted and if he served or paid his commutation, they would reimburse him to the amount of the order, was presumptively made in aid of a great public purpose, involving the general welfare, and upon sufficient consideration; and having been acted upon, it can not now be repudiated, either as to Button or the plaintiff as his assignee.

We advise judgment for the plaintiff.

In this opinion the other judges concurred.