CARRIE E. WALDEN ET AL. *vs.* DOROTHEA SIEBERT ET ALS.

Third Judicial District, New Haven, January Term, 1925.

WHEELER, C. J., BEACH, CURTIS, KEELER and MALTBIE, Js.

Uncertified evidence, though printed in the record, cannot be considered by this court.

Written exceptions to the refusal of the trial court to find as requested must be annexed to the motion to correct the finding.

In contempt proceedings against the defendants for a violation of a temporary injunction restraining them from proceeding with the erection of a spite fence, it was no defense that the actual work was done by an independent contractor.

The mere fact that the complaint and the injunction described the height of the fence as ten feet, whereas it was in reality eight feet and five inches, did not justify the conduct of the defendants in continuing its construction, since the location and character of the fence were otherwise accurately described, and the precise

meaning and purport of the restraining order were manifest to anyone of ordinary intelligence.

When a party is served with a temporary injunction, he must render instant obedience to its commands; therefore, the trial court properly found that the continued erection of a substantial portion of the fence for three hours after the injunction was served upon the defendants constituted a "wilful" violation, although they claimed to have spent the period in securing legal advice as to their rights and duties.

Argued January 30th—decided April 3d, 1925.

Suit for an injunction against defendants, brought to the Superior Court in New Haven County, wherein a temporary injunction was granted, while said court was not in session, by *Hon. Harry J. Beardsley, Deputy-Judge* of the District Court of Waterbury; defendants were thereafter held in contempt by said judge for disobedience of the injunction and each fined $50. and costs, and from this judgment they appealed. *No error.*

The complaint alleged that defendants had erected a spite fence ten feet in height between land in Waterbury owned by them, and land owned by plaintiffs, and were extending the same, and sought by way of injunctive relief a mandatory injunction compelling the removal of the portion of fence already constructed, and the cessation of further construction. On July 30th, 1924, when the Superior Court was not in session, *Judge Beardsley* granted a temporary injunction restraining the defendants from continuing the erection of the fence, until the further order of the Superior Court in the premises. On July 31st, an application was made by plaintiffs to *Judge Beardsley* claiming disobedience of the terms of the injunction, and praying that defendants be adjudged guilty of contempt of the same. On August 1st, 1924, the judge issued an order requiring the defendants, on August 6th, to show cause why they should not be adjudged in contempt

Walden v. Siebert.

of court. The defendants appeared and showed cause, and the judge, having heard the parties, on September 17th, 1924, adjudged the defendants to be in contempt for disobedience of the terms of the order of injunction, and inflicted fines as above set forth. The defendants appealed from this judgment, and stay of execution was granted pending the appeal. The judge found the facts above recited true, and also that the tracts of land owned respectively by the plaintiffs and defendants are situated in a residential part of the city, and with no mercantile buildings within a quarter of a mile in either direction. The land of defendants is bounded north by land of the plaintiffs, easterly by their land, southerly on Buckingham Street and westerly on Pine Street. There is a dwelling-house used solely for residential purposes on the land of the plaintiffs, facing Buckingham Street, and a house owned and occupied by the defendants, on part of the lot owned by them on the corner of Pine and Buckingham streets, leaving considerable open space between the house of the plaintiffs and that of the defendants.

On July 30th, 1924, the defendants were constructing on the side and rear of their lot, which heretofore had been vacant, between their dwelling-house and that of the plaintiffs, a garage. The defendants had already erected a tight board fence not less than eight feet in height extending from Pine Street to land of the plaintiffs, and on that day, by their servants and agents, Victor Bernier and his employees, were erecting a similar fence from eight feet to eight feet five inches in height along the easterly boundary line of their land (the westerly boundary line of land of the plaintiffs), between the garage of the defendants and the dwelling-house of the plaintiffs, from which it was only a few feet distant, and the defendants had constructed the fence to a point opposite a bay window

on the first floor of the plaintiffs' house, and had set posts of a similar height, and proposed to board the same to the point of its intersection with Buckingham Street.

On July 30th, 1924, the order of temporary injunction was given to a deputy sheriff for New Haven County, who on that day served a true and attested copy on each of the defendants.

Paragraph five of the complaint reads as follows: "The defendants have already erected a tight board fence ten feet in height, extending from Pine Street to the northwesterly corner of the first piece of land owned by the plaintiffs, described in paragraph 1 hereof, and have set posts and threaten and propose to erect a similar tight board fence ten feet in height on said easterly boundary line and along the westerly line of land of the plaintiffs hereinbefore described as first piece." The injunction directed to the defendants was in reference to the fence described in paragraph five of the complaint. At about 8 a. m. on the following morning, July 31st, 1924, Victor Bernier, the contractor in charge of the construction, came to the property, and before any work was done by him or his employees, Dorothea Siebert, one of the defendants in this action, handed him the copy of the process which had been left with her and asked him what was to be done. Bernier replied that he did not know but that he would take the copy to his lawyer.

The judge reached the following conclusion: "That the defendants wilfully violated the order of injunction aforesaid, in that they did on the thirty-first day of July, 1924, after the service of the order of injunction upon all of them, continue to erect the fence, until 11:45 a. m., along the easterly boundary of their property for a distance of about thirty-five feet, the con-

tinued erection of the fence having been forbidden by the order of injunction."

The defendants made the following claims of law during the hearing: "(1) That the defendants could not be guilty of contempt of court because such contempt must be shown, and no such evidence was offered; (2) that the defendants could not be guilty of contempt of court because said fence was being constructed under a contract by a principal, and that Bernier was neither her agent nor servant, and that the defendants had no control of his acts or conduct; (3) that if a contempt was committed, it was committed by Victor Bernier, contractor; (4) that Dorothea Siebert did all that was possible to carry out the order of court; (5) that the injunction in question forbade further construction of a ten-foot fence, and that no evidence that such a fence was being constructed contrary to the order had been introduced."

The defendants moved to rectify the finding in certain respects, which will be considered in the opinion. Their reasons of appeal assign error with reference to the conclusions above quoted, and the refusal to rectify the finding.

*Frank B. O'Neill,* for the appellants (defendants).

*Walter F. Torrance,* for the appellees (plaintiffs).

KEELER, J.  Two motions were made to rectify the finding, both directed to produce some statement by the judge to the effect that Bernier, the person employed by defendants to build the fence, was an independent contractor.  Certain evidence claimed to bear upon this point is printed in the appeal record, but the same is not certified either by stenographer or judge, as required by the rules of practice, and cannot be con-

sidered by us for that reason. It further does not appear, but is distinctly negatived by the record, that the exceptions to the refusal of the judge to find as requested were annexed to the motion or filed at the same time. It may be said, however, that had this fact been found, it would not have availed the defendants. In the complaint it was alleged that they were doing an act in itself illegal, as it certainly was if the allegations were true. In such a transaction it is not available as a defense that in doing an illegal act one has employed a contractor, who by his contract has entire control of the means and methods of executing the work proposed and is answerable to his employer only for the result contemplated, thereby becoming an independent contractor. It is the doing of the illegal act which is enjoined, and it makes no difference what means are employed by a defendant in so doing. These defendants were enjoined not to continue building the fence, and it was just as feasible to interrupt the work of an independent contractor as that of one who was not. If any damage enured to them from such an interruption, the injunction had been granted upon filing of a substantial bond by plaintiffs, so that defendants were immune from loss in case they prevailed in the action.

The main claim of defendants stated in the reasons of appeal, in various ways from different viewpoints, is that the act of continuing the building of the fence was not, upon the facts found by the judge, a disobedience of the terms of the injunction, in that the fence which they were constructing was at its highest point only eight feet five inches, while they were charged with erecting, and enjoined from continuing to erect, a fence ten feet in height. Stated in another way, the height of the fence was the gist of the action, citing *Baldwin* v. *Miles*, 58 Conn. 496, 502, 20 Atl. 618, which

lays down the rule that " 'Injunctions ought to be made plain and distinct. No respondent is to be entrapped into a contempt by vague and general orders.' " Clearly there was nothing vague or general about the form of the injunctive order in the instant case. There can be no doubt but that the fence in question was clearly indicated in the temporary injunction. Paragraph five of the complaint, quoted above, describes a tight board fence that had already been erected and a contemplated continuation of the same which was in process of erection, and the defendants were enjoined to wholly desist from continuing the further erection of this fence. The only variation from absolute accuracy of description of the structure was in overstating its height. Other details regarding the fence were entirely accurate, that is, its location and character. There was but one fence being built on the property and that was on the easterly boundary of the lot as described. The purpose of the order was manifest to anyone of ordinary intelligence; it was to stop the building of a spite fence, which the fence rapidly progressing toward completion was alleged to be.

As bearing upon the point of actual violation of the order, defendants claim that in view of the conduct of Dorothea Siebert, who took charge of the matter, so far as anything was done about it, in handing the copy served on her to Mr. Bernier and asking him what was to be done about it, no wilful violation of the injunction took place. It appears that Bernier told her he would see his lawyer about it. It does not appear of record whether he did so, but however that may be, the work on the fence proceeded until 11:45, and the fence was extended for a distance of about thirty-five feet during that period of time. It is the claim of defendants that they were not bound by the injunctive order to instantly stop the construction

of the fence at their peril, but were entitled to a reasonable time to ascertain their legal rights in the matter. Having regard to the rapidity with which the building of the fence was progressing, and their leisurely way of becoming acquainted with their rights, it would seem that they were in the way of getting knowledge of their rights and also getting their fence had the inquiries and the building continued much longer. The order of the injunction should have been obeyed and the work on the fence stopped, while defendants were taking steps to ascertain their rights. There is nothing in the finding to show that the interests of the defendants would have been harmed by the short delay in construction which would have ensued had a motion for dissolution of the injunction been made, and the result of a hearing thereon awaited. The other way to proceed was the one taken, to disobey the injunction and await the result. Both are effective; the one taken involves the usual hazards attendant upon contempt of court. In view of the fact that the erection of the fence had proceeded to a point opposite a bay window forming part of the plaintiffs' dwelling, and was already a nuisance, and that but a short time would elapse before the fence was completed and the mischief done, it can hardly be held that the lack of prompt obedience to the injunction was not wilful. If the work could properly be continued and finished during the time which defendants' counsel contend should have been allowed to investigate the legality of the order, the fence would have been finished and the plaintiffs would have been compelled to await for several months, probably, the trial of the action in the Superior Court. If the order of the judge was to be of any avail to plaintiffs, prompt obedience to it was necessary. Any action delaying such conformity could not be anything else than wilful.

There is no error.

In this opinion the other judges concurred.