## CITY OF BRIDGEPORT *vs.* TOWN OF GREENWICH.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued February 9th—decided April 18th, 1933.

*Isadore L. Kotler,* with whom was *John T. Cullinan,* and, on the brief, *Joseph J. Devine,* for the appellant (plaintiff).

*H. Rogers Jones,* Assistant Attorney-General, with whom was *Ernest L. Averill,* Deputy Attorney-General, and, on the brief, *Warren B. Burrows,* Attorney-General, for the State of Connecticut, *amici curiœ.*

*William C. Strong,* with whom, on the brief, was *Wilbur S. Wright,* for the appellee (defendant).

HAINES, J.   The plaintiff seeks a judgment against the defendant for care of a pauper—George Haywood—from October 6th, 1927, to his death, February 3d, 1929, plus the cost of burial, $695.67.   Haywood was born in England March 6th, 1852, and came thence to Greenwich in 1899, was never married or naturalized, and lived and died an alien in this country. He was employed in Greenwich until July, 1918; in Stamford until 1920; in Darien until 1922, and in Bridgeport until 1926; then in Fairfield for a short time, returning to Bridgeport in April, 1927; during all this period being self-supporting.   He first applied for relief April 16th, 1927, while residing in Bridgeport, and was furnished relief by that city from October 6th, 1927, for the period stated.   The plaintiff notified, and sent monthly bills therefor to, the defendant, but payment was refused.   The complaint bases the claim for judgment against the defendant upon the allegation that during all the time the plaintiff cared for Haywood he "had a legal settlement in said town of Greenwich."   Being unnaturalized, he could only have gained a legal settlement through

admission by vote of the inhabitants, or by consent of its justices of the peace and selectmen as provided by statute. General. Statutes, Rev. 1888, § 3285; Rev. 1902, § 2466; Rev. 1918, § 1613; Rev. 1930, § 1684. No such action was ever taken, and the allegation of settlement made in the complaint is thus negatived by the facts, and, strictly construed, the pleadings furnish no basis for a judgment in favor of the plaintiff. By tacit consent of court and counsel, however, the complaint has been interpreted to cover the question whether liability attaches to this defendant on any ground, and for the purpose of a final determination of the matter and in the public interest we treat the case on that basis.

As early as 1792 it was determined in this State that if an alien had no settlement in any town of the State his maintenance was a charge upon the State. *Somers* v. *Barkhamstead*, 1 Root, 398.

When Haywood first came to this State in 1899, the operative statute provided that paupers should be maintained at the expense of the town "where they belong." General Statutes, Rev. 1888, § 3295. The town designated by the quoted words was that town in which the pauper had a legal settlement. "The word, *belongs*, when used in our public and private statutes, and especially when used in reference to inhabitancy, the poor, etc., has been uniformily understood and construed to designate the place of a person's legal settlement, and not merely his place of residence. . . . *Columbia* v. *Williams*, 3 Conn. 467; *Waterbury* v. *Bethany*, 18 Conn. 425." *Reading* v. *Westport*, 19 Conn. 561, 564. The same phrase appears in the Revision of 1902, § 2476, Revision of 1918, § 1623, and now in Revision of 1930, § 1693.

Haywood came into this State as an alien and never acquired a settlement in any town in this State, and

so was not chargeable to Greenwich under the above statutory provisions.

A brief reference to the legislation on the care of paupers by the State, shows that, at least as far back as 1878, state-care was provided as follows: "All persons needing relief, who have no settlement in any town in this State, shall be State paupers, and shall, when needing relief, be provided for by the comptroller for the period of six months after they come into this State." The after-care of such persons was provided for as follows: "All State paupers after the period of six months . . . shall be sent back to the town where they resided when they applied for relief, and said last-mentioned town shall thereafter be chargeable for their support until they shall have gained a settlement in some other town; *provided,* said paupers shall have had a residence therein for a period of six months or more prior to the time when they applied for relief; but if said pauper shall not have had such residence in said town for the period aforesaid, and shall have had such residence in any other town in the State, said town in which they have last had said residence, six months or more shall be chargeable with their support. And if said pauper shall not have had a continuous residence in any town in this State for a period of at least six months, then the town in which they resided at the time they applied for relief shall be chargeable with their support until they shall have gained a settlement in some other town in accordance with the provisions of this act." Public Acts, 1878, Chap. 94, §§ 3 and 21.

In a case decided in 1883, the plaintiff contended that the words "for the period of six months after they come into this State," meant "the period of six months that first elapses after the pauper's arrival in the State," while the defendant claimed that it meant "the

first six months of pauperism whenever that might happen to be." In that case the person came into the State in Chatham in 1872, and lived in various towns until 1880, when he became a pauper while in the town of Marlborough, having supported himself for the previous eight years. If the provision for state-support had meant what the plaintiff claimed, it would have followed that the first six months of residence in the State terminated all responsibility of the State for his support in any event, and under the statute relating to town-care the town of Chatham in which he had that six months of residence, was not liable because he had no settlement there. Such an interpretation of the provisions for state-care would, moreover, have been inconsistent with the provisions for after-care which we have quoted. The court held that the statute intended, by the language used, the first six months of pauperism. *Marlborough* v. *Chatham*, 50 Conn. 554, 557.

In 1885, the foregoing provision for state-care was amended to read as follows: "All persons needing relief, who have no settlement in any town in this State, shall, when needing relief, be provided for by the comptroller for the period of six months next after they come into this State, and no longer." Public Acts of 1885, Chap. 71. Identical language appears in the Revision of 1888, § 3311, and in the Revision of 1902, § 2493. In 1890, it was said by this court that the provisions of the 1885 statute "make the six months for which the pauper is to be provided for by the comptroller, the first six months of his residence in the State, and not of his pauperism." *Canton* v. *Burlington*, 58 Conn. 277, 282, 20 Atl. 602. The brief and argument of the plaintiff in the case at bar is based upon the claim that Haywood, by his first six months' residence in Greenwich in 1899, acquired a "pauper

status," which, though not strictly a legal settlement in that town, yet had the effect of imposing liability upon the town when and if, at any time thereafter, he became a pauper, and in this contention the plaintiff is supported in behalf of the State, by the Attorney-General, who has filed a brief as *amicus curiae* in this court. If the plaintiff were correct and Haywood acquired such a status under the Act of 1885, the then-existing provisions for after-care would have shown the same inconsistency which the court considered in *Marlborough* v. *Chatham, supra,* and if, at any time before October 1st, 1907, he had in fact become a pauper, it would have been necessary to deal with that question.

In 1907, however, the policy of the State with regard to paupers having no settlement in any town in this State, was radically changed, it being provided that "all persons who have no settlement in any town in this State . . . shall, if in need of relief, be provided for by the comptroller as state paupers at the expense of the State," and the provisions theretofore made for after-care, were repealed, and this has remained and now is the law of this State. Public Acts of 1907, Chap. 201, §§ 1 and 6; Rev. 1918, § 1642; Rev. 1930, § 1710. This changed policy, by specific provision in § 5 of the Act, became operative October 1st, 1907, so that thereafter the care of state paupers was imposed upon the State alone. It was further provided by § 5 of that Act, that it should not apply "to any person who shall have received relief or support as a pauper at the expense of the State for a period of less than six months preceding said first day of October, 1907, and the status as a pauper of any such person shall be and remain the same as before the taking effect of this Act." Thus, a pauper whose maintenance by the State had begun but had not continued

for the full six months was to remain a state charge to the end of the six months, and thereafter be sent back to the town then chargeable with his support under the old law. As to those paupers who had already received six month's maintenance by the State and been sent back to the town, their status was already fixed and determined under the old law, their after-care being a town charge. If this status could thereafter be changed by statute—a point we do not decide—yet there is nothing in this legislation of 1907 which indicates any intent on the part of the legislature to give it retrospective operation, and an Act is never given retrospective effect unless absolutely required by its terms. *O'Connor* v. *Hartford Accident & Indemnity Co.,* 97 Conn. 8, 17, 115 Atl. 484; *Hartford* v. *Poindexter,* 84 Conn. 121, 136, 79 Atl. 79; *Humphrey* v. *Gerard,* 83 Conn. 346, 352, 77 Atl. 65; *Atwood* v. *Buckingham,* 78 Conn. 423, 426, 62 Atl. 616; *Middletown* v. *New York, N. H. & H. R. Co.,* 62 Conn. 492, 497, 27 Atl. 119.

In support of the plaintiff's contention, an opinion by Hon. Marcus H. Holcomb, Attorney-General, in 1909, is cited. It is claimed to show that the first six months of Haywood's residence gave him a "pauper status" and fixed liability upon the town of Greenwich for his support when he subsequently became a pauper in 1927. The opinion reviews the legislation above mentioned and holds that, under the statute in effect prior to the Act of 1907, the liability of the State ceased six months from the time the pauper came into the State, and after that six months period, liability for his further support was upon the town designated by the applicable statute, as in General Statutes, Rev. 1902, § 2496. It is stated that while the pauper would not have a legal "settlement" in the town where his residence met the statutory con-

ditions, within the meaning of the term as generally used, he would have a legal "status" in that town. The opinion then discusses the effect of the fifth paragraph of the Act of 1907 and says it carefully provides "against including paupers whose status was in process of formation" on October 1st, 1907. This clearly and correctly refers to those who were paupers on that date and were being supported for a six months period which had not then expired. It was held to be "illogical and unreasonable to assume that the legislature intended to include within the operation of the Act and burden the State with the support of ninety-nine per cent of this class of paupers whose 'status' was fully established when they were careful to exclude the one per cent whose 'status' was in process of formation." It is clear that the Attorney-General was here speaking of two classes of persons who were "paupers" viz.: (1) those who had not been supported for the full six months, and (2) those who had been supported for the full period and were then town charges for their after-care under the old law. The opinion correctly holds as to the latter class that their status was fixed and would not be changed by the Act of 1907 unless it were given a retrospective operation, and the language of the Act gives no indication of such an intent. We find nothing in the opinion to indicate that reference was made or intended, to those aliens who had never been paupers before October 1st, 1907.

When Haywood, an alien, came into the State for the first time and took up his residence in Greenwich, he was not a pauper, and until he became one, he was not within the purview of the pauper laws, and had no concern with their provisions. If, at the time he came, he had been unable to maintain himself, and had applied to Greenwich for relief, it would then have been incumbent upon the State to assume his

maintenance for six months, and thereafter he would have been sent back to and maintained by that town. When he applied for relief in Bridgeport, in 1927, twenty-eight years after he came into the State, he assumed for the first time the status of a pauper, and became subject to the then-existing laws providing for the maintenance of paupers. "His status was fixed by the statute in force when he first applied for relief." *Canton* v. *Burlington, supra* (headnote). Being an alien, with no settlement in any town, he became, under the existing statutes, a State pauper, to be maintained by the State. Rev. 1918, § 1642; now Rev. 1930, § 1710. We hold this to be the true intent of the Act of 1907.

The judgment for the defendant in the trial court was correct.

There is no error.

In this opinion the other judges concurred.