## E. M. LOEW'S ENTERPRISES, INC.
*vs.*
## INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES ET ALS.

Superior Court      Hartford County      File No. 56547

MEMORANDUM FILED JUNE 13, 1940.     127 Conn. 415

*Joseph X. Friedman,* of Hartford, for the Plaintiff.

*Spellacy & Yeomans,* of Hartford, and *Joseph P. Cooney,* of Hartford, for the Defendants.

KING, J. This case is a retrial of an action in which a judgment for the plaintiff was reversed by the Supreme Court of Errors on appeal. The opinion, giving the principal facts in the case as originally tried, is to be found in 125 Conn. 391.

As hereinafter more particularly set forth, important factual and legislative developments intervened between the time of

the first trial and that of this trial, so that the decision of the Supreme Court of Errors has not the necessarily controlling effect on the actual outcome of this trial which might ordinarily be expected.

As in the first trial, the plaintiff seeks injunctive relief and damages against the defendants for peaceful picketing of its Hartford theatre, mainly on the ground that the strike is over, if there ever was one, and that therefore the defendants have no longer a right so to picket, even though peacefully, under the rule laid down in the opinion of the Supreme Court in the appeal from the judgment for the plaintiff originally rendered in the first trial of the case.

The defendants deny the factual issue that the strike is over, deny that under the decision in the *Loew* case the plaintiff is entitled to recover, and also claim that the provisions of chapter 309a of the 1939 Supplement to the General Statutes is a positive bar to the rendition of judgment for the plaintiff.

Various subordinate claims of the parties will be noted in the course of this memorandum.

Although the case was briefly argued orally, no claims of law were separately filed by either party under section 157 of the Practice Book (1934) but each party filed an able and well-reasoned brief in which the respective claims of each were clearly set forth.

The decision in *Loew's Enterprises, Inc. vs. International Alliance of T. S. E.*, 125 Conn. 391, although of course controlling in so far as applicable, is not conclusive of this case for at least three reasons: (1) the enactment, effective July 1, 1939, of chapter 309a of the 1939 Supplement to the General Statutes, commonly known as the anti-injunction statute, referred to in paragraph 1 of the stipulation filed in this case on May 9, 1940; (2) the amendment to the complaint filed April 16, 1940, adding paragraphs 17 to 22, inclusive, to the original complaint as amended, and the new issues thereby raised and tried at the present trial; and (3) the additional evidence presented on this trial in support of the allegations of the original complaint as first amended December 21, 1937, prior to the first trial.

Counsel shortened this trial by paragraph 2 of the above stipulation to the effect that all of the facts in the finding as

made by Judge Cornell for use in the appeal of the case to the Supreme Court of Errors, *supra*, should be taken as facts in this case. Thus additional, but not inconsistent, facts are the only ones to be found under the contested issues here, principally those raised by the complaint as finally amended and the amended answer thereto filed May 14, 1940, admitting paragraph 17 of the amended complaint and denying paragraphs 18 to 22, inclusive, thereof.

Under the rule of *Palmer vs. Reeves*, 120 Conn. 405, 411, it would probably be incumbent on the court even without the stipulation, to consider the bearing of chapter 309a, since it purports to affect the jurisdiction of the court over the subject matter of the action in so far as equitable, that is, injunctive, relief is sought.

The parties are in disagreement as to the involvement in this case of chapter 309a, and this is one of the major points of controversy. The plaintiff claims that the statute is not involved because it affects substantive rights, and, so, is not retroactive or retrospective in its operation. This contention is based on the familiar principle that a statute affecting substantive rights is not to be interpreted as operating retrospectively. Parenthetically, it perhaps should be noted that the point made by the plaintiff that the statute affects substantive rights and, therefore, cannot be construed to have a retrospective operation, is based upon a canon of statutory construction. *Bridgeport vs. Greenwich*, 116 Conn. 537, 543. No claim was made that the statute in question, if operating retrospectively as to substantive rights, would be unconstitutional. Practice Book (1934) §157; *Rindge vs. Holbrook*, 111 Conn. 72, 77; *Galluzzo vs. State*, id. 188, 189. As stated on page six of the plaintiff's trial brief, its claim on this head is that "whether or not the statute (309a) applies depends on whether the statute affects substantive rights or whether it is merely procedural. Clearly, if the statute affects the substantive rights of the plaintiff, it is not retroactive and is not applicable to this case...."

In general terms the purport of the statute, as far as this case is concerned, is to the effect that no court shall have jurisdiction to grant an injunction against "peaceful picketing", except in certain circumstances, and under certain conditions, admittedly not present in this case.

In considering whether the statute purports to affect substantive rights, or merely procedure, it should be borne in mind

that this is a legal action for a tort, claiming money damages, and, as ancillary and additional relief, an equitable remedy in the form of an injunction. *Skene vs. Carayanis,* 103 Conn. 708, 714; *Loew's Enterprises, Inc. vs. International Alliance of T. S. E.,* 125 id. 391, 395. Either party could have claimed a jury trial, had he so desired, of the legal issues in the case. The action is not inherently equitable in its nature, with an ancillary prayer for legal relief. It is inherently legal in its nature with an ancillary prayer for equitable relief. *Berry vs. Hartford National Bank & Trust Co.,* 125 Conn. 615, 618. Although the analogy is imperfect, it resembles an action in damages for trespass with a prayer for injunctive relief as ancillary thereto. And lest even that analogy mislead, it should be remembered that the equitable relief here sought is not against the continuance of a permanent or quasi-permanent object, situation or status, existing at the commencement of the original proceeding and continuing without interruption up to and including the time of rendition of judgment, such as a building obstructing a right of way (where there is no legal remedy in ejectment but only the equitable remedy of injunction) as in *Waterbury Trust Co. vs. G. L. D. Realty Co.,* 121 Conn. 50, 52. *See, also, Sisters of St. Joseph Corp. vs. Atlas Sand, Gravel and Stone Co.,* 120 Conn. 168, 173 and *Hawley vs. Beardsley,* 47 Conn. 571, 574. This seems to point strongly to the conclusion that the statute affects a particular kind of relief only, and not the substance of the cause of action.

On the other hand the plaintiff, in so far as its claim for damages is concerned, may recover only on the basis of such wrongs, if any, as the defendants *have* already committed, and the relief asked is in no sense prospective. But as to these past wrongs, if any, it can secure no injunctive relief, for a person cannot be enjoined from doing that which he has already done. *State ex rel. Tillman vs. District Court,* 101 Mont. 176, 53 P. (2d) 107, 103 A.L.R. 376, 383. As is set forth in paragraphs 1 and 2 of the claims for relief, the plaintiff asks for an injunction "restraining the defendants . . . . forthwith from picketing or in any way interfering with the conduct of the plaintiff's business . . . ." And this, properly particularized to fit this case, is substantially the form of the original judgment from which the plaintiff (as distinguished from the defendants) took no appeal.

As previously mentioned, the plaintiff has amended its com-

plaint twice, first on December 21, 1937, before the first judgment, and again April 16, 1940, subsequent to the determination of the appeal but prior to this second trial. In each instance matter was set up which did not exist at the commencement of the action, the plaintiff properly realizing that its right to injunctive relief depended upon the facts as they stood at the time of the issuance of the injunction. 14 R.C.L. Injunctions §§6-8.

Furthermore, the second amendment, as also pointed out above, relies on matter which in part, at least, came into existence after the effective date of chapter 309a. As stated in 14 R.C.L. Injunctions §8: "It is also a rule that where the rights of the complainant depend on a statute they are to be determined with reference to the statute in force at the time when the relief, if any, is to be awarded."

The cause of action here, if any is stated, would be complete without any claim for an injunction. If "peaceful picketing" is unlawful under the circumstances here obtaining, the plaintiff is entitled at least to nominal damages. The legal relief alone might be less efficacious than if accompanied by the equitable relief, and the latter also avoids a multiplicity of suits. Neither of these considerations affects the substance of the action. *Berry vs. Hartford National Bank and Trust Co.*, *supra*, 618.

The injunctive relief asked for is necessarily prospective in its operation. The plaintiff is not asking for an injunction against any acts committed prior to July 1, 1939, nor against any acts committed even up to the date of rendition of this judgment. Nor is it asking for a mandatory injunction calling on a person to do some affirmative act. It asks for an injunction forbidding a *future* course of conduct on the part of certain individuals or groups of individuals, presumably, because it realizes that a court cannot enjoin the flow over the dam of water which has already turned the millwheel and is flowing down the stream below. *See Walden vs. Siebert,* 102 Conn. 353, 360.

The defendants' counsel claimed in oral argument, and also in his brief, that the anti-injunction statute "legalized" peaceful picketing in a case where it forbade the issuance of an injunction, or in other words, that if the statute prohibited the issuance of an injunction it operated, *ipso facto,* to prevent an

award of damages for the same acts, if ultimately committed. To my mind this contention is unsound. Chapter 309a, in so far as involved in this case, seems to be clearly and studiously addressed to (§1421e) depriving the courts of "jurisdiction to issue any....injunction in any case involving or growing out of any labor dispute to prohibit any person....from....(e) giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking or patrolling or by any other lawful method; (f) assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute; (g) advising or notifying any person of an intention to do any of the [foregoing] acts....; (h) agreeing with other persons to do or not to do any of the acts hereinbefore specified and (i) advising or urging or otherwise causing or inducing by any lawful method the acts hereinbefore specified." Certain sections of the Norris-LaGuardia Act on which other courts relied in reaching a conclusion that their statutes "legalized" acts, as well as deprived the courts of jurisdiction to enjoin their commission *in futuro*, are absent from our own statute. These omissions are highly significant in view of the fact that whole sections of our act are practically verbatim copies of corresponding sections of the Norris-LaGuardia Act.

In tabular form, the sections of our act (chapter 309a) may be compared with those of the Norris-LaGuardia Act (29 U.S.C.A. §§101-115) as follows:

| | |
|---|---|
| §1420e | §113 |
| §1421e | §104 |
| §1422e | §106 |
| §1423e | §107 |
| §1424e | §109 |
| §1425e | §108 |
| §1426e | §110 |
| §1427e | §111 |
| §1428e | §114 |

We have no sections in chapter 309a corresponding to the following sections of the Federal act: 101, 102, 103, 105 (See §§1422e, 1447e), 112, 115.

There is nothing in chapter 309a which says that these acts (jurisdiction to enjoin the commission of which is denied to the courts) are legal, or that if they violate the rule as laid down in the *Loew* case (assuming that rule as applied to peaceful picket-

ing is constitutional in view of the decision in *Thornhill vs. Alabama*, 310 U.S. 88, 84 L. ed. 1093), injuries proximately resulting from such violation may not be redressed in an action for damages. The history and wording of our own and kindred statutes shows that the objective of their proponents was to cur-tail the injunctive powers of courts. It is true that some of the courts have construed statutes similar to our own as "legal-izing" picketing. However, our statute contains no declaration of policy such as does the Norris-LaGuardia Act (29 U.S.C.A. §102), and our court has always been careful not to confuse the basic distinction between law and equity. *Berry vs. Hartford National Bank & Trust Co., supra.*

That an injunction is to be granted only on the basis of the facts existing at the time of the issuance of the decree, is ele-mentary law. *Hubrite Informal Frocks, Inc. vs. Kramer*, 297 Mass. 530, 9 N.E. (2) 570, 572. And this is true although a right of action for damages for past acts still exists. Id. 573.

It is true that section 1422e effects a change in the substantive law of agency and conspiracy (perhaps inconsistent with that attempted in the last sentence of §1447e) but the defendants made no claim that it operated to absolve them from liability in this case, so that its application is not involved in, and has no bearing on, the case at bar.

The plaintiff contends that subdivision (c) of section 1423e effects a change in substantive law. Construing the act, and especially that section, as a whole, I think it clear that "each item of relief" means the various prohibitory mandates of the injunction—the only type of relief referred to in the act. If damages at law were to be included, the section would be meaningless, unwarranted and impossible of application. It does not seem that a court could apply the equitable doctrine of comparative injury to an award of money damages. *Sisters of St. Joseph Corp. vs. Atlas Sand, Gravel and Stone Co.*, 120 Conn. 168, 175.

The mere fact, even if true, that a part of this statute effected a change in substantive law and for that reason should not be construed to operate retrospectively, and even the further claim, not here made, that a legislative attempt to give such an application would be unconstitutional, could not affect the decision in this case if the relevant portions of the statute are not retrospective in their application to the particular situation

before the court. This is especially true in view of section 1428e. *State vs. Miller,* 126 Conn. 373, 379. And it is also elementary that a statute may be adjudged unconstitutional in its application to one set of circumstances or persons and still be constitutional as to another set of circumstances or persons. *State vs. Sinchuk,* 96 Conn. 605, 613.

The injunction sought in this case is against picketing of a peaceful character. Indeed it would be difficult to conceive of any picketing conducted in a more orderly fashion. (See photograph of pickets, defendants' Exhibit 1.) Immediately upon the granting of the permanent injunction by Judge Cornell, in May, 1938, all picketing ceased, and was resumed only upon the reversal of that decision by the Supreme Court of Errors one year later.

Subdivisions (d), (e), (f), (g), (h) and (i) of section 1421e all restrict more or less the granting of injunctive relief against peaceful picketing, although subdivisions (e) and (f) of that section are especially pertinent. Clearly these subdivisions are intended to, and do, deprive the Superior Court of jurisdiction to enjoin peaceful picketing such as occurred here, if the facts involved are within the purview of the Act, since no claim was made by the plaintiff of compliance with the provisions of section 1423e, nor did it offer any evidence along this line. *Wilson & Co. vs. Birl,* 105 F. (2d) 948.

For the reasons given above it seems to me that the anti-injunction statute, in so far at least as it is invoked by the defendants in this case, is: (1) addressed solely to the ancillary equitable relief incidentally claimed in the plaintiff's action at law, and (2) does not affect or change the substantive law governing the plaintiff's rights, and (3) is wholly prospective in its operation.

This brings us to the question of the applicability of chapter 309a to this case in the sense of whether or not there is a "labor dispute" within the definition of that term as given in section 1420e. This question, although somewhat similar to, is distinct from, the non-statutory test as to the granting of injunctive relief against peaceful picketing as given in the *Loew* case. In some instances perhaps a decision of the one question would be conclusive of the decision to be rendered in the other. Here that does not seem to me necessarily to be the case. Although the plaintiff did not raise this point in its brief, I think it proper that it should be considered in deciding the case.

As already pointed out, our statute is an almost verbatim copy of the so-called Norris-LaGuardia Act, 29 U.S.C.A. §§101-115, except that we have no sections corresponding to sections 101, 102, 103, 105, 112 and 115 of the Federal act.

The decisions of the lower Federal courts have not been entirely harmonious as to what is a "labor dispute" within the language of the Norris-LaGuardia Act.

Cases as to whether or not there is a "labor dispute" within the meaning of generally similar anti-injunction acts, state and Federal, are collected in an annotation in 124 A.L.R. 751, 755, and in prior annotations therein cited. These decisions are quite naturally not in harmony, due in part to differences in the wording of the statutes under consideration. However, even in the cases construing statutes which, like ours, are patterned on the Norris-LaGuardia Act, and closely follow its wording, the constructions of the various courts have not been completely in accord.

I see no essential difference between the wording of sections 1420e and 1421e of our Act and the corresponding sections 113 and 104 of 29 U.S.C.A., the Norris-LaGuardia Act. The question of what is a "labor dispute" within the meaning of the Federal act is fully discussed in *New Negro Alliance vs. Sanitary Grocery Co.*, 303 U.S. 552, 559, 82 L. ed. 1012, 1015, and it seems to me that the term clearly embraces a dispute such as we have here, which is, broadly speaking, a dispute between an employer who in many of the theatres in its large chain employs members of the defendant union as projectionists, but who refuses (or at least fails) so to do in his Hartford theatre. *See, also, Lauf vs. Shinner & Co.*, 303 U.S. 323, 327, 82 L. ed. 872, 876.

I therefore conclude that chapter 309a is applicable in that we here have a "labor dispute." Under these conditions the statute deprives this court of jurisdiction to grant an injunction against peaceful picketing such as is sought in this case.

This leaves for determination the question of the plaintiff's right to damages, and under the view of the law which I have taken, it is unaffected by the enactment of chapter 309a. In other words the same question presents itself as existed in the first trial of the case as far as damages are concerned, but with additional evidence and the addition, by amendment, of paragraphs 17-22 of the complaint.

I think it should be noted that the report of the appellate proceedings following the first trial of this case does not mention the fact that money damages were asked, but construing the decision most favorably to the plaintiff, I am applying the rule as laid down by the Supreme Court not merely to the plaintiff's right to injunctive relief, but also to its claim for money damages.

At the outset of the action the plaintiff alleged in its original complaint that it had suffered greatly in its business as a result of the activities of the defendant.

In the amendment of December 21, 1937, before the first trial, it stated (paragraph 14) that its business, since some time after the commencement of the action, but before December 1, 1937, was "progressing normally", although in the next paragraph (15) it claimed "irreparable damage."

In the amendment of April 16, 1940, it repeated in paragraph 20 its allegation that its business, this time since some time after the beginning of the action but before March 21, 1940, was "progressing normally", although in the next paragraph (21) it claimed again irreparable damage.

The burden of proving the facts necessary to entitle it to a decision of the case in its favor under the rule in the *Loew* case is of course on the plaintiff.

It is not necessary to repeat, except incidentally, the facts set forth in the original finding of Judge Cornell. Taking up where that left off, it appears that the plaintiff's theatre has continued to operate without breakdown or interruption in the performance of its programs, with projectionists and employees who were reasonably skillful and efficient.

The picketing hours have been reduced from the schedule (of about 10 a.m. to about 10 p.m. on week days and from about 5 p.m. to about 10 p.m. on Sundays) followed (except for the interval during the life of the permanent injunction) from August 14, 1937, when picketing commenced, up to about November 1, 1939. Since about November 1, 1939, the schedule has been from about 4:30 p.m. to about 8:30 p.m. The important thing here, however, is that the picketing has been unintermittent. Regardless of weather, it has been kept up each day, substantially on schedule.

The strike benefits paid Ferla (Finding, paragraph 31) have

been discontinued since he is now a full fledged hairdresser working full time in that occupation. The strike benefits paid Mrs. Platti and Mrs. Spakowski have ceased.

Pierce is now working as a projectionist at the Lenox Theatre in Hartford, a Warner Brothers' Theatre, which obtains its projectionists through a contract with the defendant Motion Picture Operators' Union.

Sicaras is now working as a projectionist at the Central Theatre in Manchester, also a Warner Brothers' Theatre, which obtains its projectionists through a contract with the same defendant union.

Hazel is now working as a projectionist at the State Theatre in New Britain, which obtains its projectionists through a contract with the same defendant union.

Estey is now employed at G. Fox and Company in Hartford, a department store.

Spakowski is still a student at the University of Connecticut.

It was not proved that either Mrs. Spakowski or Mrs. Platti are employed at present, and Mrs. Platti asked the plaintiff's manager for a job a few days before the present trial. Neither side called Mrs. Platti to the stand although she was in the courtroom during at least part of the trial, and the situation as to her was apparently similar to that involving the witness Cavanaugh in *State vs. Segar,* 96 Conn. 428, 438. I drew no inference unfavorable to either party from the failure of either to call her as a witness.

None of the foregoing employees of late have been picketing, except that Pierce picketed the afternoon before this trial began.

Although the plaintiff's manager was allowed, over defendant's objection, to testify that the receipts of the Hartford theatre were "normal", opportunity was given to, and utilized by, the defendant to test this statement on cross examination, and it was brought out that varying conditions of weather, type of attraction, competing attractions and other uncertain factors so affect a theatre's attendance at any particular time of the year that it is hardly possible to make a comparison between given periods in different years such that the expression "normal" is very definite. The plaintiff made no effort to

submit accurate accounts of its receipts nor to give monthly or yearly averages. It is significant that the plaintiff's receipts were below normal ("substantially diminished") at the time of the first trial in May, 1938 (Finding, paragraph 36) but according to its manager became normal at about the time of the issuance of the permanent injunction, when, of course, the picketing necessarily should, and in fact did, wholly cease.

The defendants and their affiliates form an organization known as the Central Labor Union of about six thousand members, living in and around greater Hartford, each of whom is expected not to patronize the plaintiff's theatre and would be subject to reprimand if he did. There was no testimony that any of these members, or any members of their respective families, have attended the plaintiff's theatre since the strike began.

Financial support for legal proceedings in this case is furnished by the defendant unions, and notices appeared in their monthly bulletins up to and including that published last before this trial to the effect that the Loew Theatre in Hartford is unfair to labor and that union members are asked not to patronize it.

The plaintiff is now paying a greater total of wages for the operation of its projection booth than before the strike, and I feel has failed to sustain its burden of proof that it may not reasonably be expected, if the picketing continues, that the plaintiff ultimately will give in to the defendant unions to the extent, at least, of enabling them to secure recognition, by projectionist contracts, of their unions by the plaintiff and to insure renewal of subsisting contracts with other Hartford theatres. Whether Pierce would prefer work at the plaintiff's theatre or not is not known. The system of the defendant union is to contract to supply a competent corps of projectionists to a theatre contracting with it and then to assign to that theatre qualified members of its union as seems to it best. So that whether or not Pierce returned to work for the plaintiff, there would be three or four more places for defendant's members in the projection booth of the plaintiff, alone, if they won the strike.

There are few, if any, "ace" or first run theatres, other than the plaintiff's, in the City of Hartford, which do not contract for projectionists through the defendant union, and the defend-

ant union's chances to renew these contracts would be weakened if it became definitely clear that the plaintiff had effectively defeated the defendants' attempts to unionize its theatre. These contracts are renewed annually for terms beginning with September, in each year.

Furthermore, the plaintiff has such contracts with the defendant's union in some of the other theatres in its extensive chain. Those too may well fall if the plaintiff can prevail here in Hartford. *West Allis Foundry Co. vs. State*, 186 Wis. 24.

It is apparent that the number of persons to be benefited by the unionization of the plaintiff's theatre in Hartford, to say nothing of the several non-union theatres in the rest of its extensive chain, is very great, and all these persons have a stake in the continuance of, and ultimate success of, this labor dispute, and the peaceful picketing of the plaintiff's Hartford theatre, carried out, as it has been, unintermittently, is a weapon of industrial conflict stamped as legitimate by our own Supreme Court of Errors. While there was no testimony that the plaintiff had not been able to obtain experienced and skillful projectionists, it is significant that the corps has been increased from three to four. No satisfactory explanation of this increase in personnel was given by the plaintiff although it was a matter peculiarly within its knowledge.

The plaintiff places great stress on the case of *Dail-Overland Co. vs. Willys-Overland, Inc.,* 263 Fed. 171, 191, *affirmed, sub. nom. Quinlivan vs. Dail-Overland Co.,* 274 Fed. 56. This case involved the construction of the provisions restricting the use of injunctions found in the Clayton Act, and as pointed out by the annotator in 122 A.L.R. 1294, the court found that the strike was "over" because the plant was employing more persons than when the dispute began, although the court had issued an injunction that forbade the closing of the plant by the strikers, thereby keeping the plant open. In any event the case cannot stand in the face of *New Negro Alliance vs. Sanitary Grocery Co., supra*. In this case now before the court the erroneous issuance of a permanent injunction in the first trial interrupted the sequence of picketing for a year. The plaintiff's receipts may have risen since that time, and have failed again to decline when picketing was resumed but this fact as already pointed out, may have been due to a number of causes wholly distinct from the picketing. And in considering the potential compulsive force of the picketing the defendants

should not be prejudiced by the mistake of the Superior Court on the first trial, a mistake, if it can be called that, readily made since the point decided was an original question in this State and one on which the authorities elsewhere were split. Anno. 122 A.L.R. 1292. It would take some time for the picketing, after a year's interruption, especially on the ground on which the injunction was issued, again to make itself felt and the burden of proving that the strike has no reasonable chance of success is on the plaintiff. Another case stressed by the plaintiff in its brief is *Micamold Radio Corp. vs. Beedie,* 156 Misc. 390, 282 N.Y.S. 77. In so far as that case is authority, if it is, for the proposition that a statute worded as is chapter 309a cannot restrict the power of a court to grant ancillary injunctive relief against the commission of future acts long after the effective date of the statute, merely because they are similar to acts committed by the defendants prior to the institution of the case and prior to the effective date of the statute, I am unable to follow its reasoning. Certainly the General Assembly has become singularly impotent if by instituting litigation before the effective date of a statute one can thereby obtain relief contrary to the obvious intent and clear terms of that statute, by amendments to the complaint filed, and setting up allegations of fact coming into existence, subsequently to the effective date of the statute, especially where, as here, the equitable relief sought is solely injunctive against acts *in futuro.* See *Waldo vs. Portland,* 33 Conn. 363, 371. As already pointed out, the statute does not purport to, and in my opinion does not, affect the plaintiff's right of action in damages for any consummated wrongful acts, if there were any, whether occurring before, or after, the effective date of the statute.

Good citizenship and the law itself demanded that the defendants instantly comply with the order of injunction. *Walden vs. Siebert,* 102 Conn. 353, 360. Had they attempted any violence or defiance of the injunction or of the forces of law and order they would be liable to injunctive restraint even under chapter 309a. *Walden vs. Siebert, supra,* 360. That law furnishes no protection to lawlessness or violence. (§1423e [a].) "The power and duty of the State to take adequate steps to preserve the peace and protect the privacy, the lives, and the property of its residents cannot be doubted." *Carlson vs. State of California,* 310 U.S. 106, 84 L. ed. 1104.

It follows that the plaintiff has no right to damages nor to

an injunction, under the rule of the *Loew* case, without regard to the anti-injunction statute.

If this conclusion is incorrect, but the previous conclusion that chapter 309a is a bar to injunctive relief is sound, the error would affect only the damages at law.

The plaintiff has given no evidence as to the amount of its damages which would support a judgment of other than nominal damages in the event that it is entitled to damages at all. So that if the conclusion that the plaintiff is entitled to no damages is erroneous, it has not prejudiced the plaintiff. *Schmeltz vs. Tracy,* 119 Conn. 492, 496.

If the plaintiff in the future is entitled to legal relief, it can obtain it for any future acts on the part of the defendant without regard to this decision, and, upon evidence of actual damage, be recompensed in any amount proved. And in the event that the picketing becomes violent, or intimidating, as distinguished from peacefully persuasive, the plaintiff is entitled to injunctive relief under chapter 309a, except for the partial restriction provided in section 1422e. It also has a right to protection under the criminal law for any violence or breach of the peace. *Thornhill vs. Alabama,* 310 U.S. 88, 84 L. ed. 1093.

Of course, it is hardly necessary to add that the duty of the court is to construe with fairness and justice the legislative will as manifested in chapter 309a. With the wisdom or propriety of this legislation (short of absolute unconstitutionality in a given case) a court has no concern. To allow such considerations to intrude would be for the court to set its will above that of the coordinate legislative branch of the government, and in itself would be an unconstitutional act. *State vs. Nelson,* 126 Conn. 412, 424.

Judgment may enter for the defendants to recover their taxable costs.