○JOSEPH. C. CARRIER, Appellee, *vs.* JAMES H. HOOPER, Appellant.

*Opinion filed December 21, 1910.*

1. SPECIFIC PERFORMANCE—*when evidence of complainant's understanding of provision of contract is competent.* The written contract for the sale of property controls in a specific performance proceeding, yet testimony by the complainant that he understood the defendant was to pay the taxes for a certain year is competent for the purpose of showing the offer of the complainant to perform the contract as he understood it, where there is a provision in the contract for the payment of some taxes by the defendant which either sustains complainant's understanding of it or is ambiguous.

2. SAME—*when the defendant is properly required to perform.* Where the complainant has made a sufficient offer to perform within the life of the contract and removed all substantial objections to the defendant's title raised by the bank which was to loan complainant money to complete the purchase, it is proper to require the defendant to perform, there being no equity in his claim of non-performance by the complainant, as to deny relief in such case would be to give the defendant the benefit of the efforts and expenditures of the complainant in clearing up defendant's title, to which benefit the defendant had no just claim.

APPEAL from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding.

A. D. GASH, for appellant.

HORTON, WICKETT, MILLER & MEIER, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, Joseph C. Carrier, filed his bill in equity in the superior court of Cook county against the appellant, James H. Hooper, asking the court to compel the specific performance by Hooper of a contract for the execution of a quit-claim or special warranty deed to Carrier of two lots in Austin Heights, in said county. Hooper by his answer denied that Carrier had offered to perform the contract or

his part by tendering the full amount due thereon within the time limited thereby. The issues were referred to a master in chancery, who reported that the contract was made; that there was an honest difference of opinion between the parties on the construction of the terms of the contract as to who should bear the burden of certain taxes; that an offer was made by Carrier, under the advice of counsel, of the amount which he claimed was due, and that there was a sufficient effort made to comply with the terms of the contract and a sufficient offer by Carrier, and he recommended a decree that Hooper specifically perform the contract upon payment to him of $1975. The chancellor reviewed the report of the master on exceptions thereto, overruled the exceptions and entered a decree in accordance with the report, requiring Hooper to deliver a proper deed of the premises, and ordering Carrier, on the tender of such deed, to pay Hooper $1975, with interest at five per cent from January 1, 1910, and to pay Hooper's costs. This appeal was prosecuted from the decree.

The facts of the case are peculiar and the relations of the parties and the purpose of the contract are somewhat unusual. On December 27, 1892, Carrier, who was the owner of two vacant lots, entered into a contract with F. M. Chandler for the erection thereon of a residence and barn. Chandler purchased from the Carey-Lombard Lumber Company materials therefor, but did not complete his contract nor pay the lumber company, and the company filed a petition for mechanic's lien in May, 1893. The petition for mechanic's lien was pending in the superior court until September 19, 1899, when it was heard and dismissed for want of equity. The lumber company appealed to the Appellate Court for the First District, and there was no appearance for Carrier in that court. The Appellate Court reversed the decree on January 4, 1901, and remanded the cause to the superior court. The case was re-docketed that month in the superior court and was reached for hearing on

March 1, 1902, when there was no appearance for Carrier,
and a decree was entered for $659.25 and the lots were
ordered sold in default of payment. They were sold to
C. Demick and a certificate of sale was delivered to him,
which was afterward assigned to Hooper, the solicitor for
the lumber company. When the period of redemption ex-
pired Hooper obtained a deed of the premises, but he made
no move to obtain possession and rested quietly, with no
notice to Carrier, so far as appears, until more than five
years had elapsed after the decree. The time in which Car-
rier might have obtained a review of the decree by the writ
of error having expired, Hooper brought an ejectment suit
to obtain possession of the premises. A plea of the general
issue was filed, but when the case was reached for trial
there was no appearance for Carrier and he had no knowl-
edge when the case was to be tried. Judgment was entered
and a writ of possession was issued on September 27, 1909,
under which Carrier was evicted from the premises. Car-
rier filed a bill to set aside the title acquired by Hooper,
and on November 1, 1909, the contract which is the basis
of this suit was entered into between the parties. The con-
tract consisted of two documents,—one a lease to Carrier
at $40 per month, and the other a contract by which Hooper
was to give a quit-claim or special warranty deed upon
payment of $2000 within sixty days and the rent was to
be deducted from the purchase price. Carrier was to fur-
nish his own abstract of title and the deed was to be sub-
ject to all taxes and assessments levied after the year 1901
and also to four tax deeds, and if the taxes to be paid by
Hooper could not be paid at the time the contract was to
be closed, he agreed to pay them on or before May 1 next
ensuing. Carrier paid $25 and re-entered the premises.
The contract was quite evidently made as a compromise and
settlement of the controversy between the parties. Hooper
was to give a quit-claim or special warranty deed, subject
to four tax deeds on the property and all taxes after 1901,

covering a period when he claimed to own the property. The contract was made to get rid of the claim which he had established against the property. It was necessary for Carrier to clear up the title to get the quit-claim deed which would release the property from the claim of Hooper, and he made an arrangement with a bank to obtain the money to pay Hooper. The bank found objections to the title, and Carrier procured releases and removed many objections and paid out considerable money in doing so. Before the expiration of the time limited by the contract he offered to pay Hooper $1923, claiming that Hooper was to pay the taxes of 1909, which Hooper disputed, and it was because of this claim that it is insisted Carrier did not offer to perform.

Counsel for Hooper contends that the master in chancery erred in permitting Carrier to testify that his understanding was that Hooper was to pay the taxes of the year 1909, and that if this evidence is disregarded there is nothing upon which the court can find that there was a sufficient offer within the life of the contract. The evidence was competent for the purpose of showing the offer of Carrier to perform the contract as he understood it, and there was apparent ground for such understanding. It is true that the written contract controlled, but it contained a provision relating to some taxes to be paid by Hooper which it was contemplated could not be paid at the time when the contract would be closed but which he was to pay by the following May. That provision referred to taxes which would not be payable in the sixty days between November 1 and December 31, 1909, and could refer to nothing but the taxes of 1909. The contract could be fairly interpreted as requiring Hooper to pay the taxes of 1909, since there were no other taxes which could have been referred to. Even if that provision could be regarded as ambiguous, Carrier had a right to his conclusion as to its meaning. It is further contended that Carrier did not, in fact, make a sufficient offer to perform within the life of the contract,

but we are of the opinion that the master was right in his conclusion on that subject. The substantial objections to the title pointed out by the bank were removed, and there is no good reason shown in the record for saying that Carrier could not obtain the requisite amount of money to pay Hooper whenever Hooper should make his deed. There was no equity in Hooper's claim, and to deny the relief asked for by the bill would be to give Hooper the benefit of the efforts and expenditures of Carrier in clearing up the title, to which he had no just claim.

The decree is affirmed.

*Decree affirmed.*