E. M. LOEW'S ENTERPRISES, INC. *v.* INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES ET ALS.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued February 8—decided May 5, 1939.

*Joseph P. Cooney,* for the appellants (defendants).

*Joseph X. Friedman,* with whom, on the brief, was *Josiah H. Peck,* for the appellee (plaintiff).

MALTBIE, C. J.  The material facts found so far as necessary to present the determining issue in this case may be stated as follows:  The plaintiff operates a moving picture theater in Hartford.  It employed two projectionists and two assistant projectionists, none of whom, previous to 1937, were members of any union.  After discussion among themselves they decided to join a union affiliated with the American Federation of Labor and ultimately did so.  While their applications for membership were pending, a union connected with the American Federation was organized in Hartford for employees engaged in theatrical service in motion picture theaters, and it included among its membership two cleaning women and three ushers employed by the plaintiff.  While this union was being organized, the plaintiff entered into a contract with a union known as the Projectionists Club of New England, whereby it undertook to employ as "mechanics and workmen" in its projection booths only members of that club and to pay them on a basis of certain stipulated wages.  The men employed in the plaintiff's projection booth were asked to join the club and the plaintiff's president and manager supported the request, but the men adhered to their intention to join a union affiliated with the American Federation.  Following difficulties in the operation of the projectors in the theater, for which one of the projectionists, Pierce, was held responsible by the

management, he was discharged. The business agent and secretary of the union to which he belonged called upon the plaintiff's president and discussed with him the restoration of Pierce to his position and also the recognition by the plaintiff of the American Federation union. The discussion ended with the president's statement that under no circumstances would the plaintiff hire projectionists at its Hartford theater who were members of any union affiliated with the C. I. O. or the American Federation of Labor.

The next day one of the other projectionists appeared at the theater, informed the manager that he was "through," was paid off and voluntarily left the plaintiff's employment. At the same time other employees of the plaintiff walked out, including one assistant projectionist, three ushers and two cleaning women, who were members of the union affiliated with the American Federation. Soon after, two men appeared on the sidewalk in front of the plaintiff's theater, each carrying a sign on which was printed in large type "Labor trouble in this theatre with members of the International Alliance of Theatrical Stage Employees and Motion Picture Machine Operators of the United States and Canada." From that time, August 14, 1937, until an injunction was granted by the court on May 3, 1938, two men carrying these signs walked back and forth on the sidewalk in front of the theater at all times while it was open for business. This was carried on in part by men who had left the plaintiff's employment and in part by other members of the defendant unions.

The act of the employees in leaving the plaintiff's employment was intended to constitute a strike and the conduct of the men in walking on the sidewalk in front of the theater carrying the signs was intended to be a picketing in aid of the strike. The alleged pur-

poses of the strike were, first, to secure Pierce's restoration to his former position, and, second, to obtain recognition of the unions affiliated with the American Federation of Labor. Neither the individual nor the union defendants made any complaints as to working conditions at the theater, or made any specific demand on it of any kind, or for redress of any grievance. Since the employees of the plaintiff left their employment some of them have secured positions elsewhere or entered into other occupations. However, one of the ushers and the two cleaning women have not been employed and have been paid strike benefits continuously up to the time of the trial. The conduct of the persons patrolling in front of the plaintiff's theater has at all times been orderly and peaceable. Nevertheless the plaintiff's business decreased at one time to the extent of one third and remained in a substantially diminished state up to the time of the trial. The plaintiff at all times operated its theater without interruption of its appointed schedule with a full complement of employees, although its programs have occasionally suffered interference due to lack of experience or skill on the part of those whom it has employed. During the period of about four months next preceding the trial, its programs had been carried out without interruption of any kind, and, except as above stated, the operation of its theater has been in all respects normal. The trial court concluded that the right to maintain the picketing existed only as an incident to and during the continuance of a bona fide strike, that the strike terminated at the latest about four months previous to the trial, and that the continuance of picketing thereafter constituted an unlawful interference with the plaintiff's rights; and it issued a permanent injunction against the continuance of the picketing. The correctness of the conclusion

that the strike had terminated is vital to the decision
of the trial court; the claims of law of the defendants
as stated in the finding are addressed to that conclu-
sion; we regard it as presenting the controlling issue
of the case as presented to us.

All struggles between capital and labor represent a
conflict of interests, the employee seeking to secure for
himself more favorable working conditions and a bet-
ter financial return, while the employer, on the other
hand, is seeking to keep down the cost of production
and to carry on his business in the manner which he
deems most advantageous to its success. The interests
of both in this struggle are legitimate, and both,
within certain limits, are justified in seeking to fur-
ther the objectives they are striving to reach by any
legitimate means. The word "picketing" is used by
the courts with reference to acts of employees greatly
variant in character. Oakes, Organized Labor, § 327.
As used by the trial court in this case it evidently
meant no more than that men representing the strik-
ers and the unions walked back and forth upon the
sidewalk in front of the plaintiff's theater, carrying
signs with the legend above quoted, and Oakes states
that picketing of this nature is uniformly regarded as
lawful. Op. Cit., § 328. Such picketing undoubtedly
is designed to, and does, interfere with the business
which the employer is entitled to carry on without
other restraint than such as is lawful. *Skene* v. *Cara-
yanis,* 103 Conn. 708, 714, 131 Atl. 497. The justifi-
cation for interference with free commerce by such
picketing is that it serves to further the legitimate
interests of labor.

Whether the objectives sought in the controversy
before us and the results which might follow from
the acts of the defendants are such that the picketing

would be in any event unlawful was a question not decided by the trial court and we do not need to consider it. One limitation upon the right to picket is that when it ceases to serve the purpose it seeks to accomplish, no matter how legitimate that purpose may be, the justification for interference with the employer's business no longer exists. As the authorities hereinafter cited show, picketing thereafter becomes an unjustifiable harassment of the employer. The question then is at what point will picketing be held to be unjustifiable because the labor struggle of which it is an incident has ceased. Into the determination of that question various factors may enter. See dissenting opinion in *West Allis Foundry Co.* v. *State,* 186 Wis. 24, 39, 202 N. W. 302. Thus, to mention a few: The employer may be able to establish that he can, despite the efforts of labor, carry on his business in the usual and normal way; it may appear that there is no one whom a continuance of the picketing could benefit; organized labor may have withdrawn its support and only the sporadic efforts of a few individuals continue; the interference with the employer's business may have ceased to have as its object a bona fide effort to serve the interests of labor and have become no more than an effort to injure the employer. Where labor has in good faith continued in a bona fide effort to serve its interests, the underlying test is whether or not there is longer any reasonable expectation that the picketing can accomplish a legitimate purpose which it seeks to bring about. The fact that the employer has proven his ability, despite the efforts of labor, to carry on his business in the usual and normal course would go far to sustain a finding that this is not so. But under this test, the mere fact that the employer has been able to secure and maintain a full comple-

ment of employees and to operate his plant normally would not of itself justify a conclusion that the picketing had become unjustifiable, if he still continued to suffer seriously from loss of patronage.

A consideration of the decisions we have found dealing with this question substantiates our conclusion. In *M. Steinert & Sons Co.* v. *Tagen,* 207 Mass. 394, 397, 93 N. E. 394, the court held that the act of certain teamsters in driving a wagon through the streets bearing an inscription to the effect that union teamsters were on strike at the plaintiff's place of business was unjustifiable when in fact the strike there had long before ended, all the strikers had secured employment elsewhere or left the state, the plaintiff had a full complement of workers, and the union had ceased giving aid to the men who had left its employment; and the court said that the defendants' acts were not in any way adapted to benefit the defendants or their union. In *Samuel Hertzig Corp.* v. *Gibbs* (Mass.) 3 N. E. (2d) 831, 832, the court said: "When a strike has become merely nominal, without substantial effect upon the business of the employer or genuine hope of success, continued acts of interference with business can no longer be justified as lawful incidents of an existing strike." In *West Allis Foundry Co.* v. *State,* 186 Wis. 24, 34, 202 N. W. 302, the court, in holding that a strike had terminated, said: "Clearly, the conditions in defendant's business were then such that it was not materially affected by the strike, and there were no reasonable grounds for believing that a continuance thereof would materially affect the defendant's business." See also *Moore Drop Forging Co.* v. *McCarthy,* 243 Mass. 554, 562, 137 N. E. 919; *Simon* v. *Schwachman* (Mass.) 18 N. E. (2d) 1, 4; *Dail-Overland Co.* v. *Willys-Overland, Inc.,* 263 Fed.

171, 188, affirmed 274 Fed. 56, 65; Oakes, Organized Labor, § 311.

In the case before us, the conclusion of the trial court that the strike had terminated at the latest about four months previous to the date of trial is evidently based directly upon its finding that during that four-months period the plaintiff's programs had been carried out without hindrance of any kind and aside from the picketing and the loss of patronage due thereto the operation of the theater had been in all respects normal. The picketing had, however, been carried on continuously with the support of the defendant unions up to the time of the trial; and three of the persons who left the plaintiff's employment have not since been employed and have continuously received strike benefits. While this number is small, it is to be noted that the whole staff of employees at the theater, aside from the manager and assistant manager, consisted of fourteen people, including five ushers most of whom were boys attending school and working outside of school hours. The situation presented is not one where all striking employees have secured other positions, and it could not well be claimed that the strike had ended on the rather narrow ground that there were no employees who might benefit by it. The outstanding fact was that the picketing directly and seriously interfered with the patronage of the plaintiff's theater to such an extent that the business after a decrease at one time of one-third had remained in a substantially diminished state up to the time of trial. The court has not found that there was no reasonable expectation that the picketing would attain the object sought by the defendants. Lacking that, in the situation before the court the facts it has found are insufficient to support its conclusion that the strike had terminated.

There is error, the judgment is set aside and a new trial ordered.

In this opinion BROWN and JENNINGS, Js., concurred; HINMAN and AVERY, Js., dissented.