The bill in this case was filed for the purpose of restraining the defendants from picketing complainant's place of business at 103 Halsey street, Newark. The defendants are five former employes of the complainant, the union to which they belong, and Brown, the general manager of the union. It developed at the hearing that Brown is no longer the general manager of said union.
Complainant is engaged in the retail shoe business and has been so engaged for over twenty-five years. Sometime in November, 1937, four of his salesmen, Eugene Freund, Daniel Rafaele, Jack Reback and Meyer Fagan, joined the defendant union. The other defendant, Samson Elerbee, Jr., the porter employed by complainant, later joined the union. The union entered into negotiations with complainant with the idea of entering into a contract. This contract was finally signed which provided, among other things, the terms of the services and commissions, working hours, vacation allowances, c. It provided that the complainant would employ only members of the union. Article 14 of the contract reads as follows: *Page 43 
"This agreement and all of its terms shall inure to the benefit of and shall bind each of the parties hereto and their respective heirs, executors, administrators, successors and assigns. This agreement and all of its terms shall also inure to the benefit of the individual members of the union."
Article 15 provides that:
"This agreement shall take effect on the day and date of this execution and shall continue in full force and effect until the 18th day of December, 1938. The parties hereto hereby and herewith agree that no later than two weeks prior to the expiration of this agreement, they will commence negotiations for a new agreement to be entered into between the parties."
The contract was to run for one year. During that period the complainant employed, in addition to the above salesmen, certain of his relatives who were not members of the union. No objection appears to have been made by the union to such employment. On December 5th, 1938, complainant communicated with the union and stated that he had not received a form of new contract in place of the one which would expire on December 18th, and also stated that some changes would be required in any new agreement. He notified the union that, "on the 18th day of December, 1938, I shall consider said contract terminated and of no effect." On December 6th the defendant Brown wrote to the complainant acknowledging receipt of his letter of December 5th and asking for an appointment to discuss the terms of a new contract. The parties thereafter met and discussed with each other the terms of the proposed contract. The union asked for an increase in wages, additional vacation periods, c. The complainant objected to these requests and finally the union representatives agreed to waive them. The complainant stated that due to a decline in his business he would not require the full time services of four salesmen and would only require three salesmen. The union, however, insisted that four should be employed but offered to consider reducing the number to three if proof was submitted that the volume of business did not warrant the employment of four. The proof required as demanded by the union was that the union be permitted to examine complainant's financial records. To this the complainant *Page 44 
would not consent but offered to furnish a statement prepared by his accountant. Such a statement was prepared by complainant's accountant taken from his books and records which disclosed a decrease in the amount of business transacted. The union refused to accept it on the ground that the accountant was not a certified public accountant.
On Saturday, December 17th, the day before the contract expired, the parties had not reached an agreement. Complainant on that day inserted in the pay envelope of each of the employes who belonged to the union a written notice that the contract with the union having terminated and negotiations for a new contract having been unsuccessful, the services of such employes would no longer be required. On Monday morning, December 19th, complainant engaged three new salesmen who were not affiliated with the defendant union. On Tuesday, December 20th, the defendants commenced to picket the complainant's store. A temporary restraint against picketing was granted which was reversed by the Court of Errors and Appeals. Blonder v. United RetailEmployes, c., 126 N.J. Eq. 322. Picketing was again resumed on November 15th, 1939, and has continued to the present time. On January 4th, 1940, picketing was limited by an order of this court to one picket at a time. The picketing was not accompanied by violence although it appears there were attempts made by the pickets by word of mouth as well as the use of signs and the distribution of handbills to influence customers and prospective patrons of the complainant not to trade at the store and to buy elsewhere.
The contract expired on Sunday, December 18th, 1938. The question, therefore, arises whether or not the contract fixed the term or duration of the employes hiring and whether that hiring automatically terminated on the expiration date of the contract. Employes may, provided they do not attempt to create a monopoly, act in concert through their union in the sale of their labor on stipulated terms. A union may enter into a contract with an employer for the benefit of its members. In the absence, however, of an assent by the employes a provision in such a contract that it will remain in effect for a fixed period does not operate to fix the term of employment *Page 45 
of such employes. 63 Corp. Jur. 672 § 22. There is nothing before me to indicate that the original hiring of the defendant employes was for any fixed or definite period. The rule is that an indefinite hiring is presumed to be a hiring at will and may be terminated at the pleasure of either party. 39 Corp. Jur. 44§ 17; also p. 71 § 60; Kitty Kelly Shoe Corp. v. UnitedRetail, c., Local 108, 126 N.J. Eq. 374 (reversed on other grounds), Ibid. 318, and cases cited (at p. 382).
It, therefore, follows that complainant for the reason that he entered into a contract with the union lost during the term of the agreement his right to discharge the members of the union at will. The contract having terminated the benefit thereof was lost to the employes and the relation of master and servant reverted to its common law status which existed prior to the making of the contract with the union. When the employes were dismissed the relation of employer and employes was at an end and there was no one against whom the former employes could strike and there was no one against whom complainant could effect a "lockout."Lieberman v. Retail Clothing, c., Union (docket 129, page 62, no yet reported); Miller's, Inc., v. Journeymen TailorsUnion, c. (docket 129, page 21, not yet reported).
The defendants contend under the case of McPherson Hotel Co.
v. Smith, 127 N.J. Eq. 167, that the filling of the striking employes places with other permanent and competent employes and the resumption of the normal operation of the business does not terminate a strike. The case before me is distinguishable from the case above referred to. In the McPherson Hotel Case the proofs were that the gross average business of the hotel as a result of picketing had been reduced twenty-five to thirty per cent. and that the hotel was operating at a heavy financial loss. The proofs in the present case are that the complainant is maintaining his volume of sales at the same level as existed prior to the commencement of the picketing. In the case of E.M.Loew's Enterprises v. International A.T.S.E., 125 Conn. 391;6 Atl. Rep. 2d 321; 122 A.L.R. 1287, Chief-Justice Maltbie said:
"One limitation upon the right to picket is that when it *Page 46 
ceases to serve the purpose it seeks to accomplish, no matter how legitimate that purpose may be, the justification for interference with the employer's business no longer exists. As the authorities hereinafter cited show, picketing thereafter becomes an unjustifiable harassment of the employer. The question then is at which point will picketing be held to be unjustifiable because the labor struggle of which it is an incident has ceased. Into the determination of that question various factors may enter. See dissenting opinion in West Allis Foundry Co. v.State, 186 Wis. 24, 39; 202 N.W. Rep. 302. Thus, to mention a few: The employer may be able to establish that he can, despite the efforts of labor, carry on his business in the usual and normal way; it may appear that there is no one whom a continuance of the picketing could benefit; organized labor may have withdrawn its support and only the sporadic efforts of a few individuals continue; the interference with the employer's business may have ceased to have as its object a bona fide
effort to serve the interests of labor and have become no more than an effort to injure the employer. Where labor has in good faith continued in a bona fide effort to serve its interests, the underlying test is whether or not there is longer any reasonable expectation that the picketing can accomplish a legitimate purpose which it seeks to bring about. The fact that the employer has proven his ability, despite the efforts of labor, to carry on his business in the usual and normal course would go far to sustain a finding that this is not so. But under this test, the mere fact that the employer has been able to secure and maintain a full complement of employes and to operate his plant normally would not of itself justify a conclusion that the picketing had become unjustifiable, if he still continued to suffer seriously from loss of patronage."
As above mentioned, the evidence is that the complainant has filled the places of his former employes with competent permanent persons and the business is being conducted in a normal manner without any substantial loss of revenue. Therefore, a continuation of the picketing will accomplish no useful purpose for the benefit of the defendants. The picketing has not attained the result which the defendants sought *Page 47 
and should not be permitted to continue indefinitely. The complainant has certain rights among which is the right to operate his business without continuous harassment. Lieberman
v. Retail Clothing, c., Union, supra. By this suit he seeks relief from a continuing nuisance which affects his private rights. Picketing in its mildest form is said to be a nuisance and even if not intimidating should be enjoined where no good reason for it exists. Miller's, Inc., v. Journeymen Tailors,c., supra.
The defendants claim the right to picket is guaranteed to them by the First and Fourteenth Amendments to the United States Constitution, citing the recent cases of Thornhill v. Alabama,84 L.Ed. 659; 60 S.Ct. 736, and Carlson v. California,84 L.Ed. 668; 60 S.Ct. 746. The only principle laid down in the above cases in the language of the Court of Errors and Appeals of this state is, "That, the enlightening of the public on the nature and causes of the labor dispute in that fashion may not be made the ground for an arrest and prosecution as an offense against the public." VanBuskirk v. Sign Painters Local, c.,127 N.J. Eq. 533; 14 Atl. Rep. 2d 45.
Defendants contend that the relief sought should not be granted because complainant does not come into this court with clean hands. This argument is based on the charge that complainant did not enter into negotiations in good faith and never intended to make a new contract with the defendant union. I am of the opinion that complainant did act in good faith and if there was bad faith shown it was on the part of the defendant union.
 Under these circumstances the injunction will be granted. *Page 48